[No. 1398.]

THOMAS HULLEY, PLAINTIFF AND APPELLANT, v. W. H. CHEDIC AND ADELINE, A. CHEDIC, DEFENDANTS AND RESPONDENTS.

(Syllabus by BIGELOW, J.)

1—GARNISHMENT—RIGHT OF ACTION THEREON—NOT A LIEN.—Notice of garnishment served upon a debtor, while giving a right of action against him for money owing to the defendant in the garnishment proceedings, does not constitute a lien upon money with which he may subsequently pay his debts, so as to enable the garnisher to follow the money into the hands of third persons to whom it has been paid.

2—SAME—Especially is this the case where the money in the hands of the third person does not come from the garnishee, but is obtained through the assignment by the defendant in the garnishment proceeding of a judgment founded upon the debt against which the garnishment has been levied.

3—JUDGMENT. CREDITOR—RIGHT OF ACTION AGAINST FRAUDULENT VENDEE OF DEBTOR.—A judgment creditor, whose execution has been returned unsatisfied, has a right of action to recover a money judgment against a person to whom the debtor has transferred property for the purpose of hindering, delaying or defrauding his creditors, and who has subsequently converted such property into money.

4—SUCH ACTION IS IN EQUITY.—An action brought for the purpose of obtaining such a judgment is in equity. The fact that it is brought in pursuance of an order obtained in a proceeding supplemental to execution does not make it an action at law.

5—EQUITY CASE—JURY IN—SPECIAL ISSUES.—Where a jury is called to assist in the trial of an equity case only special issues should be submitted to them. A judgment based upon a general verdict in such an action is erroneous.

6—ENDORSEE OF PROMISSORY NOTE—RIGHT OF—TRANSFERRED CAUSA MORTIS—DONOR OR HIS REPRESENTATIVES ALONE TO QUESTION.—Where a note has been regularly endorsed and delivered by the payee to the endorsee, neither the maker of the note nor his creditors can challenge the right of the endorsee to receive payment thereof, upon the grounds that the endorsement was made *causa mortis,* and that the gift had been subsequently revoked by the recovery of the donor. Only the donor or his legal representatives could make such defense.

APPEAL from the District Court, Ormsby county; *Hon. Richard Rising,* District Judge.

On June 4, 1891, A. E. Harris executed and delivered to the defendant, W. H. Chedic, a promissory note for about $4,000, which was secured by a chattel mortgage upon certain property situated in Ormsby county, Nevada. This note and mortgage, it is claimed, were immediately assigned by the mortgagee to his mother, the defendant Adeline A. Chedic, as security for $3,900 which he then owed her upon a note made by him to his father some time prior to that, and by his father given to her.

Harris had also executed another chattel mortgage upon the same property to D. C. Simpson, upon which Simpson commenced an action of foreclosure. On February 10, 1892, the Chedic note and mortgage were assigned by Adeline back to the defendant W. H., and on February 11, 1892, he intervened in the action so commenced by Simpson; alleging that

he was the owner of the said note and mortgage, and asking for a judgment thereon against Harris, and for a foreclosure of the mortgage, as a first lien upon the property. On May 19, 1892, a decree was duly rendered in his favor, accordingly.

On April 19, 1892, the plaintiff obtained a judgment against the defendant, W. H. Chedic, for the sum of $1,605, with interest and costs, upon a note made by the latter to him on October 1, 1890. The next day he duly served a notice of garnishment upon Harris, intended to garnish the money then owing by him to W. H. upon the note and mortgage then in suit.

August 4, 1892, W. H. assigned the judgment so obtained by him against Harris to the defendant Adeline, which assignment the plaintiff alleges to have been made and accepted for the purpose of hindering, delaying and defrauding W. H. Chedic's creditors. February 6, 1893, both of the defendants assigned the said judgment to Simpson for the sum of $4,195, which was paid to Adeline.

February 16, 1893, a second execution was issued upon the plaintiff's judgment against W. H., and thereunder, on the same day, a notice of garnishment was duly served upon the defendant Adeline, to which she made no answer. Under supplementary proceedings she was then cited to appear before a referee, where she denied any indebtedness to W. H., and claimed to be the owner of the money obtained by her from Simpson. Thereupon, an order was made, authorizing the plaintiff to institute an action against her to recover so much of the money as might be necessary to pay the plaintiff's judgment against W. H. Chedic, and this action was then commenced. The execution upon the plaintiff's judgment was returned unsatisfied.

The complaint asks for judgment against the defendant Adeline for the sum of $2,164 80, with interest, that being the amount due upon plaintiff's judgment against W. H. Chedic. Upon the trial, judgment was rendered for the defendants, and the plaintiff appeals.

*Trenmor Coffin* and *James D. Torreyson*, for Appellant:

In refusing to submit the special issues to the jury, as raised by the amendment to plaintiff's complaint, the judge who tried the cause certified "Refused, because not disputed

or applicable." This is practically a finding on these issues in favor of plaintiff.

The judgment of the court should have been for the plaintiff upon the well-known principles of equitable estoppel *in pais.* Mrs. Chedic having given out by her assignment of February 10, 1892, that the Harris debt belonged to W. H. Chedic, and this coming to the knowledge of Hulley, and he relying upon her representations, and having levied upon the debt by garnishment, Mrs. Chedic is estopped to deny that the debt belonged to W. H. Chedic. (*Sharon* v. *Minnock*, 6 Nev. 378; *Hostler* v. *Hays*, 3 Cal. 303; *Mitchell* v. *Reed*, 9 Cal. 212; *McGee* v. *Stone*, 9 Cal. 606; *Bleven* v. *Freer*, 10 Cal. 172; *Davis* v. *Davis*, 26 Cal. 23; *Brown* v. *Cudworth*, 31 Cal. 149; *Martin* v. *Zellerback*, 38 Cal. 300; *Quirk* v. *Thomas*, 6 Mich. 78, 118, 121; *Horn* v. *Cole*, 51 N. H. 287–300; *The Well and Canal Co.* v. *Hathaway*, 8 Wend. 480; 24 Am. Dec. 51 and notes.)

Proceedings supplementary to execution (Gen. Stats., sec. 3262, *et seq.*) are simply a substitute for the old creditor's bill in equity, and the proceedings under the statute is a matter of equity jurisdiction. (*Herlich* v. *Kaufman*, 99 Cal. 271; *Edgell* v. *Haywood*, 3 Atkins (Eng.), 352; *Smith* v. *Weeks*, 60 Wis. 94, and numerous authorities cited; *Cargill* v. *Kountze* (Tex.), Cen. Law Journal, Sept. 1, 1893, p. 170, notes and numerous authorities cited; *Adams* v. *Hackett*, 7 Cal. 201; Freeman on Ex., sec. 394; Am. & Eng. Ency. of Law, tit. "Creditors," vol. 4, p. 573, *et seq.*; *Lynch* v. *Johnson*, 48 N. Y. 33; Waite Fraud. Conveyances and Creditors' Bills, sec. 61–68 and citations.)

A court of equity is the proper form in which to enforce this demand. (Waite on Fraud. Convey. and Creditors' Bills, sec. 68 and citations; *Cose* v. *Beauregard*, 101 U. S. 688; *Kitchen* v. *Lowrey*, 127 N. Y. 53–60.)

It does not necessarily follow, because a right or remedy is provided or regulated by statute, that the subject matter is not properly of equitable jurisdiction. The foreclosure of mortgages is regulated and provided for by statute in this state. (Gen. Stats., secs. 3040, 3049, 3270, 3272.)

The manner of acquiring, foreclosing and enforcing mechanics' liens is provided for and regulated down to the minutest detail by statute. (Gen. Stats., secs. 3808, 3827.)

Likewise the statutory suit for divorce. (Gen. Stats., secs. 487, 498; Pomeroy's Eq. Jurisp., vol. 1., secs. 98, 112.)

An action to quiet title by one in possession is a statutory action, but also purely equitable. (Gen. Stats., sec. 3278; *Low* v. *Staples*, 2 Nev. 209; Pomeroy's Eq. Jurisp., secs. 1395, 1399.)

"An action brought under this statute by a party in possession to quiet title to a mining claim is an equity suit and may be tried and disposed of as such." (See opinion of Justice Hawley on motion for new trial in *Book and Blooey* v. *Justice Mg. Co.*, Fed. Rep. (not yet reported), and numerous authorities cited.)

Equity rights, remedies and practice have been improved and regulated by statute almost or quite as much as common law, rights, remedies and practice. The Supreme Court of the United States has twice said upon this subject: "Indeed much of equitable jurisdiction consists of better and more effective remedies for attaining the rights of parties." (*Broderick Will Case*, 21 Wall. 520; *Holland* v. *Challen*, 110 U. S. 24.)

The decisions of the federal courts, where law and equity are not administered in the same case, generally make clear distinctions as to what are and what are not suits in equity.

For eleven new statutory rights which are equitable in their nature and are enforced on the equity side of the courts, see Foster's Fed. Prac., sec. 7 and authorities cited.

This action is to reach equitable assets of W. H. Chedic, which were found to be beyond the reach of the ordinary summary supplementary proceedings. In such case the statute allows suit to be brought upon the order of the court. (Gen. Stats., sec. 3268.) The court made an order authorizing this suit to be brought. It might have been brought independently of the statute and without the order of court, as a suit in equity to reach the assets of W. H. Chedic.

" Two of the chief objects of creditors' bills were to reach equitable assets and to set aside fraudulent transfers of property. For the pursuit of these objects, supplemental proceedings do not afford an adequate remedy, and hence both, as formerly, may still be pursued by creditors' suits." (Freeman on Ex., sec. 394, and authorities cited.)

The pursuit of equitable assets by a suit in equity is well

established in this state by *Thompson* v. *Reno Sv. Bank*, 19 Nev. 103; *Ross* v. *Bank of Gold Hill*, 20 Nev. 191; see, also, *Bartlett* v. *Drew*, 57 N. Y. 587, and cases cited.)

Hulley brings this suit to have his lien upon another debt declared in equity a prior lien, and bases his right to such a decree upon the principles of equitable estoppel *in pais*. The defense to the suit is that while the legal title of the Harris note and mortgage were in W. H. Chedic, Mrs. Adeline A. Chedic was the equitable owner. How can a suit wherein equitable relief is sought, and wherein equitable ownership of the subject matter is the defense, be called a common law action?

Mrs. Chedic having by her assignment held out W. H. Chedic as the owner of, and having put in his power to act and deal with the mortgage as his own, and he having done so, and Hulley relying upon such action, and having connected himself with the property as the property of W. H. Chedic by garnishment, Mrs. Chedic is estopped to deny that it was the property of W. H. Chedic. (*McNeil* v. *10th Nat. Bk.*, 46 N. Y. 329; *Barstow* v. *Savage Mg. Co.*, 64 Cal. 393.)

Hulley having levied upon the Harris debt to satisfy his judgment, stands in the same position he would have occupied had W. H. Chedic assigned to him the Harris note and mortgage to secure his judgment. By his garnishment he became the equitable assignee of Chedic of the Harris debt. (*Sessions* v. *Stevens*, 1 Fla. 233; 46 Am. Dec. 339, notes and authorities.)

Plaintiff moved the court to submit special issues to the jury. The motion was overruled and plaintiff excepted. Plaintiff moved the court to submit certain special issues in writing to the jury embracing some of the vital issues in the case. These were refused and endorsed by presiding judge, " Refused because not applicable or disputed."

The jury returned with a general verdict for defendants. The jury was discharged and plaintiff requested the court in writing to make special findings covering all the issues of the case. Plaintiff requested twenty-nine findings which were refused.

The general verdict of the jury was not adopted by the

court, and the special findings of the jury and court do not support the judgment or cover the issues of the case.

There was no sufficient consideration for the assignment to Mrs. Chedic. She was not a purchaser in good faith for value and cannot hold the note and mortgage or judgment thereon or proceeds thereof as against Hulley, who levied upon it under his execution. (Jones on Chattel Mort., sec. 292 and authorities cited; *Thompson* v. *Van Vechten*, 27 N. Y. 568; *Weaver* v. *Borden*, 49 N. Y. 286; *Tiffany* v. *Warren*, 37 Barb. 571; *Button* v. *Rathbone*, 126 N. Y. 187; *Peo. Savings Bk.* v. *Bates*, 120 U. S. 562.)

A gift *causa mortis*, or in expectation of death, is a gift made by a person in sickness who, apprehending his dissolution near, delivers or causes to be delivered to another the possession of any personal goods to keep as his own in case of the donor's decease. Such transfers as a rule are not favored by the courts for the reason that they are open to the objection of uncertainty. (8 Am. & Eng. Ency. of Law, pp. 1341, 1342, and cases cited.)

It is essential to the validity of a gift *causa mortis* that it be made in expectation or contemplation of the death of the donor, and such gift is revocable by the recovery of the donor. It is said that if one deposits money to be given to a charity if he never returns from an intended long journey, it is not a gift *causa mortis*, although the donor never returns. (*Roberts* v. *Draper*, 18 Ill. App. 167.)

The expectation or apprehension *must be of death*, and *not of sickness or disability*.

If anything, the transfer in this case was only an attempt to make a parole testamentary disposition of deceased's property.

In *Weston* v. *Hight*, 17 Me. 287, the court holds that where the gift was made while the donor was in expectation of immediate death, and he afterwards so far recovered as to attend to his business for eight months, but finally died from the same disease, such gift could not be supported as a *donatio causa mortis*, there being such a subsequent recovery as vacated the gift.

In *Martin* v. *Smith*, 25 West Va. 579, gifts *causa mortis* are discussed, and it is held that it is essential to a valid gift *causa mortis*, that the donor should make it in his *last* illness,

and in contemplation and expectation of death, and if he recovers the gift becomes void, citing the 17 Me., *supra*.

These cases are further supported by *Higgins* v. *Brown*, 78 Me. 470, and further the court states that in order for such a gift to be valid it must be made during some illness or peril of the donor, and in contemplation and expectation of death from *that illness or peril, and death must also ensue therefrom*, and this is the contingency which takes the property out of the general law of administration of estates.

*Robert M. Clarke*, for Respondent:

This cause was tried by the court with a jury. The verdict was returned and recorded September 4, 1893. The notice of motion for a new trial was filed and served September 29, 1893, twenty-five days after the verdict was rendered. The record contains no order of the court or judge or stipulation of counsel extending the time to file and serve notice of motion for new trial. The statute requires the notice of motion for a new trial to be given within five days after the rendition of the verdict. (Gen. Stats., sec. 3219.)

Having failed to give the notice of intention to apply for a new trial within the time prescribed by the statute, the right to make the application is lost. (Hayne on New Tr. and A., sec. 17; 1 Cal. 396, 438; 9 Cal. 67; 15 Cal. 315; 16 Cal. 117; 26 Cal. 283; 43 Cal. 626; 49 Cal. 108; 56 Cal. 610.)

The notice of motion for a new trial not having been given in time, the statement on motion for a new trial must be disregarded, and the motion denied as to all matters set forth therein so far as they relate to the motion for new trial. Nothing can be considered except such errors as may be considered on appeal from the judgment. What has been said so far depends somewhat upon whether the action was at law or in chancery and whether the court treated the case as one at law and called the jury not to decide the case finally, but as advisory merely. It is admitted that in a chancery case the court may deny a jury trial and try the case with or without the finding of a jury. (Gen. Stats., sec. 3205.) But in all cases other than chancery cases a jury is demandable, and when demanded the court cannot try the case. "An issue of facts shall be tried by a jury, unless a jury trial is

waived or a reference be ordered as provided in this act."
(Gen. Stats., sec. 3179.)

The case at bar is not a chancery case, but is a case at law,
and was triable by a jury and not by the court sitting as a
chancellor. (Drake on Attachments; Wade on Attachments;
*Cohoon* v. *Levy*, 5 Cal. 294; *Cohoon* v. *Levy*, 10 Cal. 216; *Brennan* v. *Marsh*, 10 Nev. 283.)

The action being at law and not in equity a jury was
demandable, and the notice of motion for a new trial should
have been given within five days after the rendition of the
verdict. But whether the case was at law or in equity, a
jury trial having been granted and the whole case submitted
to the jury, and the jury having returned both a general and
special verdict, the notice of motion for a new trial should
have been given within the statutory time. The words of the
statute, namely, "when the action has been tried by a jury,"
are general; they include all cases tried by a jury, whether
at law or in equity, and in an equity case, where a jury trial
is granted, the notice of motion for a new trial must be given
within five days after the rendition of the verdict. The prac-
tice act governs the trial and subsequent proceedings in all
cases, whether at law or in equity, and the court can grant
a new trial only when the requirements of the statute have
been complied with. (Hayne on New Trials, sec. 7; *Duff* v.
*Fisher*, 15 Cal. 375; *Gagliardo* v. *Hoberlin*, 18 Cal. 395.)

The case of *Duffy* v. *Moran*, decided by this court, does not
establish a different rule than that contended for by respond-
ent. In that case " there was nothing in the transcript show-
ing that the court submitted to the jury anything but the
special issue stated, and it being a case of purely equitable
cognizance, we cannot presume the court called the jury for
any other purpose except to be advised by it." (12 Nev.
94, 98.)

In this case, the court below held that the action was at
law and not in equity, and granted a jury trial with a general
verdict, refusing to try the case upon special issues. This
being an action at law and having been tried by a jury, the
court had no authority to make findings, and the provision
of the statute requiring notice to be given within five days
after the rendition of the verdict must govern.

The rights involved in this action are purely of a legal

nature. No equitable relief is demanded and none could be granted by the court below. And whether the remedy in any case is in equity or at law depends upon whether the estate or interest to be protected, or the right asserted and sought to be maintained, is equitable or legal in its nature. In the former case the jurisdiction is in equity, in the latter at law. (Pomeroy's Remedies, sec. 359; Pomeroy Eq. Jurisp., sec. 369; *Fisher* v. *Benson*, 71 Cal. 429; *Van Vleet* v. *Olen*, 4 Nev. 96; *Peo.* v. *Center*, 66 Cal. 551; *Hyde* v. *Redding*, 74 Cal. 497.)

The right to move for a new trial having been lost by failure to give the notice within proper time, we need only consider the case on appeal from the judgment.

Appellant's point 1, namely, that the facts present an equitable estoppel *in pais;* "that Mrs. Chedic is estopped to deny that the debt belonged to W. H. Chedic," is not well taken for two reasons: 1. The notice and statement on motion for new trial being disregarded the point cannot be considered on appeal from the judgment. 2. The facts, could they be considered, do not raise an estoppel.

What respondent Adeline Chedic did, and all she did, was to assign the note and mortgage in question to W. H. Chedic, putting the legal title thereto in him for the sole purpose of the intervention; she made no representations to Hulley of any kind, nor did Hulley act upon any representations, real or supposed, made by her or by any one for her.

Mrs. Chedic in no manner defrauded Hulley. She committed no act, nor did she suffer W. H. Chedic to commit any act prejudicial to Hulley's rights. She is neither guilty of turpitude or negligence, nor was she silent when knowledge or duty, legal or moral, called upon her to speak.

The law of estoppel, as applicable to this case, is well settled. There must be a false representation or concealment of a material fact. (*Pittsburg* v. *Danforth*, 56 N. H. 272; *Griffith* v. *Wright*, 6 Cal. 248.)

The representation must be made with knowledge of the facts. (Wright's Appeal, 99 Pa. St. 425; 50 Conn. 84; 40 Ga. 181; 95 Ill. 315; 73 Ind. 315; 137 Mass. 189.)

The law of estoppel by act or declaration is well stated by Justice Field in *Biddlebogg* v. *Merced Mg. Co.*, 14 Cal. 367.

The party to whom the representation is made must have

been ignorant of the truth. (*Williams* v. *Wadsworth*, 51 Conn. 277; 72 Ind. 475; 105 Ill. 318; 98 Mass. 532.)

The representation must have been made or the act done with the intention that it should be acted upon. (63 Ala. 585; 47 Conn. 224; 50 Mich. 189; 68 Me. 232; 109 Mass. 53.)

The representation must have been acted upon. (48 Conn. 101; 105 Ill. 318; 70 Me. 190; 80 Mo. 504, 639; 139 Mass. 290; 28 Fed. Rep. 110; Bigelow on Est., 4th ed., 552; 7 Am. & Eng. Ency., pp. 12–17 and notes.)

If Mrs. Adeline A. Chedic had told Hulley, which she did not, that W. H. Chedic owned the note and mortgage, Hulley not having disclosed to her his intention to levy upon it, this would not estop her from claiming it (*Fountain* v. *Whelpley*, 77 Me. 132), at least as to the original demand or anything except costs and damages occasioned by the levy.

To allow estoppel in the absence of willful deceit or influence to more than restore the injured party would be grossly inequitable.

The court did not err in refusing the special issues proposed for Hulley. The special issues offered were immaterial and evidentiary merely. If the case was in equity the court had the discretion to deny any or all special issues. (Gen. Stats., sec. 3205; 57 Cal. 625; 59 Cal. 263; 4 Nev. 95.)

If it was at law the discussion is clearer still. If it was the " conclusion," intention or understanding of the jury that the special finding carried a general verdict for the defendants, it was not error for the court to tell the jury that if such was their understanding they should find a general verdict for the defendants. The special verdict entitled defendants to a general verdict.

The third general point discussed in the brief for appellant is irrelevant to the case. The point cannot be considered on appeal from the judgment. The gift was not a gift *causa mortis*.

*Trenmor Coffin* and *J. D. Torreyson*, for Appellant, in reply:

By section 3219, Gen. Stats., notice of motion for new trial may be given within ten days after receiving written notice of the decision of the judge. The decision of the judge in this case was rendered and judgment entered September 15, 1893. No notice in writing of the decision of the judge was

ever given.   Both the notice of motion for a new trial and
the statement were filed and served September 29, 1893, and
were in time.   (*Bell* v. *Maist*, 80 Cal. 411; *Duffy* v. *Moran*, 12
Nev. 95; *Simpson* v. *Harris*, 21 Nev. 376, and authorities
therein cited.)

In *Duffy* v. *Moran*, *supra*, the brief for appellant is apt and
in point in this case.   It is as follows:  " The court erred in
refusing to hear the case on its merits.   The judge was not
bound by the special issues found by the jury.   It was use-
less to move for a new trial until after the decision of the
court was rendered.   Until that time plaintiff was unable to
state whether he wanted a new trial."   (*Minturn* v. *Hayes*, 2
Cal. 593; *Smith* v. *Rowe*, 4 Cal. 6; *Walker* v. *Sedgwick*, 5 Cal.
192; *Still* v. *Saunders*, 8 Cal. 287; *Mahoney* v. *Caperton*, 15
Cal. 313; *Crowther* v. *Rowlandson*, 27 Cal. 376; *Freeman* v.
*Stevenson*, 63 Cal. 499; *Sweetser* v. *Dobbins*, 55 Cal. 529; *Sul-
livan* v. *Royer*, 72 Cal. 250; *Wallace* v. *Maples*, 79 Cal. 438.)

The case being in equity, and tried by the court with a
jury as advisory to the court, the notice, statement and
motion for new trial were in time.   If it could be inferred
from the record that the case was tried by a jury against
appellant's objections, it was error and may be reviewed on
appeal.   (*Simpson* v. *Harris*, 21 Nev. 375, *et. seq.*)

If there was ever any question as to the notice of motion
for a new trial, and the statement being in time, the question
was waived in the district court by respondents and cannot
now be raised for the first time in this court.   Respondents
waived the point by an unconditional acceptance of service
of the notice of motion for a new trial and of the statement,
and by submitting the motion without raising the question.
(*Simpson* v. *Budd*, 91 Cal. 488; *Johnson* v. *Wells, Fargo &
Co.*, 6 Nev. 225; *Hodgdom* v. *Griffin*, 56 Cal. 610; *Brichman*
v. *Ross*, 67 Cal. 601; *Gray* v. *Newnam*, 63 Cal. 220; *Patrick* v.
*Morse*, 64 Cal. 462.)

Respondents admit that the statement in the transcript is
a good statement on appeal.   (*Elder* v. *Frevert*, 18 Nev. 279.)

The ignoring of the law of estoppel by the judge, the tak-
ing of that question from the jury, the refusal to instruct the
jury or submit special issues upon the question to the jury,
or to make findings upon those issues, were errors of law, and
we do not understand upon what theory counsel contends

that they cannot be reviewed upon appeal from the judgment. (*Cooper* v. *Ins. Co.*, 7 Nev. 116; *Burbank* v. *Rivers*, 20 Nev. 85.)

Chedic having assigned the Harris note and mortgage to W. H. Chedic for him to deal with it as his own, and while he was so dealing with it, Hulley having levied upon the Harris debt, respondents are now estopped to deny that the Harris debts belonged to W. H. Chedic. (*Drew* v. *Kimball*, 43 N. H. 282; 80 Am. Dec. 163, notes and authorities; *Caldwell* v. *Auger*, 4 Minn. 217; 77 Am. Dec. 515; *Mitchell* v. *Reed*, 9 Cal. 204; 70 Am. Dec. 647; *Davidson* v. *Dwyer*, 62 Iowa, 332; *Hughes* v. *McAllister & Co.*, 15 Mo. 296; 55 Am. Dec. 143; *Saltus* v. *Everell*, 20 Wend. 267; 32 Am. Dec. 542, notes and authorities, p. 554; *Moore* v. *Moore*, 112 Ind. 149; 2 Am. St. Rep. 170; *Velsian* v. *Lewis*, 15 Or. 539; 3 Am. St. Rep. 184–94, notes and authorities, p. 201; *Hill* v. *Wand*, 47 Kan. 340; 27 Am. St. Rep. 288–93, notes and authorities, p. 295; *Graham* v. *Thompson*, 55 Ark. 296; 29 Am. St. Rep. 40; *Casler* v. *Byres*, 129 Ill. 257; *Stayton* v. *Graham*, 139 Pa. St. 1–12; *Trustees* v. *Smith*, 118 N. Y. 634.)

The assignment of June 4, 1891, by W. H. Chedic to Mrs. Chedic was fraudulent and void as to Hulley. Hulley was a creditor of W. H. Chedic from and after November 21, 1888. (Gen. Stats., sec. 2633; *Lawrence* v. *Burnham*, 4 Nev. 361; *Chamberlain* v. *Stern*, 11 Nev. 268; *Wilson* v. *Hill*, 17 Nev. 401.)

When a gift *causa mortis* is made, it is always subject to the *implied* condition that if the donor recovers, or if the donee die first, the gift shall be void. The recovery of G. W. Chedic from his illness, *ipso facto* revoked the gift. His recovery left the matter as if the gift had never been made or attempted. (*Merchant* v. *Merchant*, 2 Bradf. N. Y. 432; *Staniland* v. *Willott*, 12 Eng. L. & Eq. 42.)

By the Court, BIGELOW, J. (after stating the facts):

To the proper disposition of this case, it seems necessary to first determine what are the plaintiff's rights under the allegations of his complaint, and what were the issues to be determined upon the trial. Admitting, as contended by the plaintiff's attorneys, that by the assignment made February 10, 1892, from Adeline A. Chedic to W. H. Chedic, the latter

became vested with such a title to the note and mortgage as made the debt owing by Harris subject to the claims of W. H. Chedic's creditors, we are of the opinion that the plaintiff, by his garnishment of Harris, obtained no claim upon the money received by her in consideration of the assignment of the judgment to Simpson.

This conclusion is based upon two grounds: (1) However it may be with specific property in the hands of a garnishee, our conclusion is that garnishment does not give the creditor any lien upon a debt owing by the garnishee to the debtor in the action, nor upon any money or property with which he may afterwards pay it. The books speak of it as giving a "quasi lien"—such a lien as will justify the garnishee in refusing to pay his creditor until the garnishment is disposed of, and as will give the creditor a right of action against the garnishee for any money or property in his hands owing or belonging to the party against whom the writ runs (Wade, Attachm., sec. 329), but not such a lien as will enable the creditor to follow any money that may be paid thereon into the hands of third persons. The only case cited as sustaining a contrary view is that of *Sessions* v. *Stevens*, 1 Fla. 233, where the point involved was the right of an assignee of a note to maintain an action against the maker where, previous to the assignment, the maker had been garnished in an action against the payee, and judgment obtained against him in the garnishment proceedings. That, of course, is quite a different question from the one we have here, and, as applied to this case, some of the language used is a little too strong. The authorities are in conflict as to whether a garnishment creates such a lien upon specific property in the hands of the garnishee as will enable the garnisher to follow it into the hands of third persons. Among those in the affirmative we may cite *Focke* v. *Blum*, 82 Tex. 436, 17 S. W. 770, and *Reed* v. *Fletcher*, 24 Neb. 435, 39 N. W. 437; while, in the negative, we find *Bigelow* v. *Andress*, 31 Ill. 333; *McGarry* v. *Coal Co.*, 93 Mo. 237, 6 S. W. 81; *Mooar* v. *Walker*, 46 Iowa, 164; *McConnell* v. *Denham*, 72 Iowa, 494, 34 N. W. 298; *Johnson* v. *Gorham*, 6 Cal. 195; Wade, Attachm., secs. 325, 334, 338; Drake, Attachm., sec. 453; Brown, Jur., sec. 149. But, as already remarked, this is not the question here, but—viewing the case most favorably to the plaintiff—whether, by

garnishment of a debtor, a right can be obtained. which will enable the creditor to follow money paid upon the debt into the hands of third persons; and we do not hesitate to say that it cannot. Such a debt can be paid by any legal-tender money. No particular pieces belong to the creditor; and it would be, under such circumstances, an anomalous thing to hold that a lien can be obtained upon that which may be paid to him or his assignee. To so hold would be equivalent to determining that a garnishment creates a lien on all the garnishee's property which might subsequently be delivered in settlement of the debt; but, clearly, that is not the law. (Drake, Attachm., sec. 226, and cases cited.) (2) The money in the hands of Adeline A. Chedic is money received by her, not, so far as is shown by the complaint, from Harris, the garnishee, but from Simpson, upon the assignment of the judgment to him. Admitting that the garnishment of Harris would bind the money that he might subsequently pay upon his indebtedness to W. H. Chedic or his assignee, so that, by reason of its receipt, the plaintiff would have a cause of action against the assignee, that is not the situation here. Certainly, the garnishment could not have the effect to prevent Chedic from assigning his judgment. The garnishment was only for about $2,000, while the judgment was for $4,000. Subject only to the garnishment, the judgment was his, to dispose of as he saw fit. Possibly, the purchaser would take it subject to the garnishment, but it would not prevent Chedic from assigning it all. Nor would these facts make his assignee, who might again assign it, responsible to the garnisher for money received upon the assignment. Proof of these matters might be admissible upon the question of fraud, still to be considered; but they do not, of themselves, constitute a cause of action against Mrs. Chedic.

2. It is, however, alleged in the complaint that the execution upon the plaintiff's judgment has been returned unsatisfied, and that the assignment of the judgment by W. H. Chedic to his mother was without consideration, and was made and accepted for the purpose of hindering, delaying, and defrauding his creditors. We are of the opinion that, if these allegations are supported by the proofs, they are sufficient to entitle the plaintiff to a judgment against Adeline for the amount of his judgment against W. H. Chedic. The

complaint shows. that W. H. Chedic obtained the judgment against Harris. Presumptively it belonged to him. As such, it constituted property that was subject to the claims of his creditors, and if assigned by him, and received by the assignee, for the purpose of defrauding his creditors, the assignee held it in trust for the creditors; and if she subsequently assigned it to another, as it is alleged she did, then the money received by her upon the assignment is held subject to the same trust. (*Ferguson* v. *Hillman*, 55 Wis. 181; *Bank* v. *Wilson*, 74 Wis. 391; *Murtha* v. *Curley*, 90 N. Y. 372; *Fullerton* v. *Viall*, 42 How. Pr. 294; 2 Bigelow, Fraud, 420; Bump, Fraud, Conv., 567; Wait, Fraud. Conv., sec. 177.) The charge of fraud is denied in the answer, and it is this allegation and denial that constitute the issue to be tried in the action.

3. A jury trial was demanded by the defendants, but objected to by the plaintiff, who contended that the case was one in equity, and should be tried by the court, or, if a jury were called, that only special issues should be submitted to it. The court ruled that the action was at law, and should be submitted to the jury for a general verdict; and at the close of the testimony it was, against the plaintiff's objections, accordingly so submitted. A general verdict was found, upon which judgment was rendered for defendants. In this ruling, we are of the opinion that the learned judge fell into error. The principle concerning the right of a party to a jury trial is thus stated in *Fish* v. *Benson*, 71 Cal. 428, 435: " Both courts of law and in equity, in proper cases, have jurisdiction in cases of fraud; and when the facts constituting the fraud, and the relief sought, are such as are cognizable in a court of law, the parties are entitled to a jury trial. But where the case, as made by the pleadings, involves the application of the doctrines of equity, and the granting of relief which can be obtained in a court of equity, and not elsewhere, the parties are not entitled to a jury trial."

Under our system, where law and equity are administered by the same court, and in actions which, in form, in no wise differ from one another, it is sometimes somewhat difficult to determine whether the action is at law or in equity, or, perhaps more accurately, whether it calls for legal or equitable relief. The rule for determining this is well and accurately

stated in *Cole* v. *Reynolds*, 18 N. Y. 74, 76, as follows: "The principles by which the rights of the parties are to be determined remain unchanged. The code has given no new causes of action. In some cases parties are allowed to maintain an action who could not have maintained it before, but in no case can such an action be maintained when no action at all could have been maintained before upon the same state of facts. If, under the former system, a given state of facts would have entitled a party to a decree in equity in his favor, the same state of facts in an action prosecuted in a manner prescribed by the code will now entitle him to a judgment to the same effect. If the facts are such that at the common law the party would have been entitled to a judgment, he will, by proceeding as the code requires, obtain the same judgment. The question, therefore, is whether, in the case now under consideration, the facts, as they are assumed to be, would, before the adoption of the code, have sustained an action at law or a suit in equity."

The action against Adeline Chedic is based upon a state of facts in which, prior to the code, relief could only have been obtained in a creditor's suit in equity. The property sought to be made subject to the plaintiff's demand could not be reached or levied upon by an officer. "In cases where the legal title to the property is such that it cannot be seized under execution, resort to equity is necessary." (*Mulford* v. *Peterson*, 35 N. J. Law, 127, 133.) The plaintiff has no title to the money in Mrs. Chedic's hands, nor had he any to the judgment through which she obtained it. He has simply an equitable right to demand that she shall account for his debtor's property, which has been fraudulently conveyed to her, and subsequently converted into money. As a legal demand, the complaint states no cause of action whatever, (*Murtha* v. *Curley*, 47 N. Y. Super. Ct. 393; *Wellington* v. *Small*, 3 Cush. 145; *Lamb* v. *Stone*, 11 Pick. 527; *Moody* v. *Burton*, 27 Me. 427; Wait, Fraud. Conv., sec. 62), but is sufficient in equity. In *Ferguson* v. *Hillman*, 55 Wis. 181, 191— a cause quite like the present—the court, speaking by Mr. Justice Taylor, said: "The original conveyance being void as to creditors, no title, as to them, ever passed to the grantee; and if he sells it, and receives the money, he must hold the money for the benefit of the creditors. In equity, such money

in the hands of the fraudulent grantee is held for the benefit of the creditors; and although they may not be able to maintain an action at law for money had and received for their use, because they were never the owners of, or had the title to, the property which had been converted into such money, yet a court of equity, having all the parties interested before it, may make such order as to the application thereof as may be just."

*Murtha* v. *Curley* was an action brought to recover a money judgment against the defendant, upon the ground that he had, for the purpose of hindering, delaying, and defrauding the creditors of one Doyle, of which the plaintiff was one, taken a mortgage from Doyle upon certain personal property, which he had subsequently foreclosed, and converted the proceeds to his own use. The plaintiff obtained judgment, but upon appeal to the general term (47 N. Y. Super. Ct. 393) the judgment was reversed; that court being of the opinion that the action was one at law, and, as such, not maintainable. The plaintiff then carried the case to the court of appeals (90 N. Y. 372), where the latter judgment was, in turn, reversed; the court of appeals, while admitting the correctness of the decision of the general term, if the action were one at law, coming to the conclusion that it was in equity, and consequently properly brought. In delivering the opinion, Mr. Justice Earl said: "It appears from the opinion pronounced at the general term that the action was there treated, not as a creditor's bill, but as an action at law to recover damages for the fraud alleged, and the conclusion reached was that such an action could not be maintained; and the decision of the general term was sought by Curley's counsel to be sustained, in his argument before us, upon the same ground. We are of the opinion that the learned general term fell into error. The complaint contains all the allegations requisite for what is commonly called a 'creditor's bill,' to wit, that the plaintiff was a creditor of Doyle, having a judgment and execution returned unsatisfied, that the mortgages were executed by Doyle with the intent to hinder, delay, and defraud his creditors; and that Curley had converted the mortgaged property by a sale, and had taken the proceeds to his own use." It is argued, however, that the right to maintain this action came through the order

authorizing it, made in the supplemental proceeding against
Adeline Chedic; that, as that was a statutory proceeding—a
proceeding at law—the action authorized by it must also be
an action at law. This does not follow. In authorizing an
action, the statute, of course, means the kind of action cal-
culated to give the proper remedy. It may be that in some
cases an action at law would furnish full relief, while in
others it would not. In fact, in a case founded, as this is,
upon a fraudulent transfer of property, it does not seem to
be necessary to resort to supplemental proceedings at all;
and consequently, without such order, the action could be
maintained. The rule is correctly stated in 2 Freem. Exns.,
sec. 394, as follows: "But two of the chief objects of cred-
itors' bills were to reach equitable assets, and to set aside
fraudulent transfers of property. For the pursuit of these
objects, supplemental proceedings do not afford an adequate
remedy; and hence both, as formerly, may still be pursued
by creditors' suits." Besides the numerous cases cited by
Mr. Freeman, see, to the same effect, *Herrlich* v. *Kaufmann*,
99 Cal. 271; *Bank* v. *Wilson*, 74 Wis. 391, 399; *Bufford* v.
*Holley*, 28 Fed. 680.

4. Being an equity case, only special issues should have
been submitted to the jury; and it was clearly error to direct
them, against the plaintiff's objections, to find a general ver-
dict, and then to render judgment thereon as in an action at
law. (*Dunphy* v. *Kleinschmidt*, 11 Wall. 610, 615; *Simpson* v.
*Harris*, 21 Nev. 353, 376, and cases cited.).

5. From the defendants' testimony, it appears that the
note which they claim was owing by W. H. Chedic to Adeline
Chedic, and to secure which he assigned the judgment in the
foreclosure suit, was indorsed and delivered by the payee, his
father, to Adeline, a month or two before his death. The
plaintiff contends that the evidence also shows the transac-
tion to have been a gift in expectation of death; that he
recovered from the illness from which he was then suffering;
that this recovery had the effect to revoke the gift; and, con-
sequently, that she had no title to the note; and, aside from
that, he owed her nothing—the transfer of the judgment to
her was without consideration. Upon this theory the plaint-
iff requested the court to submit several special issues, and
afterwards to make findings concerning the matter, which

were all refused. We are of the opinion that these rulings were correct. The note had been, according to the testimony, actually indorsed and delivered to Adeline Chedic. Thereby, the legal title had been transferred to her; and this gave her the right to enforce payment, without regard to the relations existing between herself and the indorser. As to the maker of the note, except, possibly, in so far as he may have had an offset against the payee, the note was hers. The gift was not void, but voidable; and that only by the donor, or his lawful representative. (*Prouty* v. *Roberts*, 6 Cush. 19; *Carrier* v. *Sears*, 4 Allen, 336; *Brown* v. *Penfield*, 36 N. Y. 473; *Poorman* v. *Mills*, 35 Cal. 118.)

But, of course, without regard to this question, and without regard to whether anything was or was not owing from W. H. Chedic to his mother, if the assignment was made and accepted for the purpose of hindering, delaying or defrauding his creditors, as to those creditors it was void. (*Simpson* v. *Harris*, 21 Nev. 353, 375.) If there was no consideration, the fraud would simply be a little easier to prove. (Wait, Fraud. Conv., sec. 208.)

Judgment reversed, and cause remanded for a new trial.