# CANN v. GEORGE B. WILLIAMS LAND & LIVESTOCK COMPANY

No. 3065

September 5, 1935.                    48 P. (2d) 887.

*A. L. Haight* and *Brown & Belford,* for Appellant:

*Platt & Sinai,* for Respondent:

# OPINION

By the Court, TABER, J.:

This is an appeal from a judgment of nonsuit, and from an order denying a new trial, in an action in the First judicial district court, in and for Churchill County, wherein appellant, Eli Cann, was plaintiff, and respondent, George B. Williams Land & Livestock Company, defendant.

On January 12, 1932, in the district court of the Eighth (now the First) judicial district, in and for the county of Churchill, Eli Cann recovered a judgment against George B. Williams and M. Genevieve Williams for the sum of $12,498.26, with interest and costs. In the spring of the same year execution was issued, in pursuance of which the sheriff levied upon and sold, along with other property, "all the right title and interest" of said George B. Williams in and to five shares of the capital stock of respondent company, "all the right title and interest" of said M. Genevieve Williams in and to seven shares of the capital stock of said corporation and "all the right title and interest" of said George B. Williams in and to 1,350 shares of the capital stock of said corporation. Appellant, Eli Cann, was the purchaser at the execution sales of said capital stock—1,355 shares of which, it is claimed by him, were standing on the books of said company in the name of said George B. Williams, the remaining seven shares standing in the name of said M. Genevieve Williams. Said George B. Williams was president of the corporation and said M. Genevieve Williams its secretary. Certificates of sale of said capital stock were given by the sheriff to appellant, who claims that on May 31, 1932, he demanded of said corporation that a new certificate or certificates for said 1,362 shares be issued to him, and transferred to him on the books of the corporation.

This demand, according to appellant, was met by a refusal. Thereafter appellant brought this action in said district court against respondent corporation for the conversion of said 1,362 shares of its capital stock. The case was tried in November, 1933. At the conclusion of appellant's case in chief, respondent moved for a nonsuit. The court, after hearing argument on the motion, reserved its decision thereon, and requested counsel for respondent to go on with the case. After calling two witnesses for the respondent and recalling appellant, respondent rested and renewed its motion for a nonsuit. On January 7, 1933, the district court filed its written decision granting the motion for a nonsuit. Notice of intention to move for a new trial was served January 14, 1933, and filed January 16, 1933. On January 19, 1933, the court filed its judgment, dismissing appellant's action. On July 5, 1933, the court filed its written decision denying appellant's motion for a new trial. The case comes before this court on appeal from said judgment, and from the order denying the motion for new trial.

There were two execution sales in the case of Eli Cann against George B. Williams and M. Genevieve Williams. At the first of these sales on April 19, 1932, the sheriff sold to appellant, along with other property, five shares of the capital stock of said corporation standing in the name of George B. Williams, and seven shares of the capital stock of said corporation standing in the name of M. Genevieve Williams. At the second sale on May 18, 1932, the sheriff sold to appellant, along with other property, "all the right title and interest" of George B. Williams and M. Genevieve Williams in and to 1,350 shares of the capital stock of said corporation, represented by certificate No. 6, and claimed by appellant to have belonged, before said last-mentioned sale, to George B. Williams. Between the dates of said two execution sales, appellant instituted proceedings supplementary to execution under the provisions of chapter 43 of the civil practice act (N. C. L. sec. 8863 et seq.). In the course of said proceedings George B. Williams and

M. Genevieve Williams, judgment debtors as aforesaid, appeared and answered upon oath concerning their property. On June 6, 1932, the district judge signed an order, under the provisions of section 8869 N. C. L., authorizing appellant to institute one or more actions against George B. Williams Land & Livestock Company and three other persons for the recovery of said 1,350 shares of capital stock, alleged by appellant to have been standing on the books of said corporation in the name of George B. Williams, and other shares of the capital stock of said corporation, alleged to have been standing on the books in the names of and claimed by, respectively, said other three persons. Two days afterwards, to wit, on June 8, 1932, appellant commenced this action in trover against said corporation in said district court, demanding a money judgment for the conversion of said five shares, seven shares, and 1,350 shares, respectively, hereinbefore mentioned.

Before the execution sales, counsel for respondent notified the sheriff by letter that neither George B. Williams nor M. Genevieve Williams owned any interest in said 1,350 shares, which, he stated, were the property of respondent.

In the course of the supplementary proceedings hereinbefore mentioned, it developed that on certificate No. 6 the following appeared: "Cancelled 11/8/27 in pay't of $135,000.00 debt. See certificate No. 16."

Appellant claims that, before the execution sales, seven shares of the 1,362 alleged in this action to have been converted by said corporation belonged to M. Genevieve Williams, and that the remaining 1,355 shares belonged to George B. Williams. After said execution sales, and until the alleged conversion, appellant claims that he was the owner of all said 1,362 shares. After respondent's alleged refusal to issue new certificates of stock to appellant and transfer same on the books of the corporation, appellant commenced this action in trover praying for a money judgment against said corporation for the value of said 1,362 shares of capital stock at the time of its alleged conversion.

Respondent takes the position that it is and at all times, since the first execution sale, has been ready and willing to issue a new certificate or certificates of stock to appellant in lieu of the said five and seven shares, respectively, standing on the books of the corporation in the names of George B. Williams and M. Genevieve Williams. The remaining 1,350 shares, however, respondent claims as its own property (treasury stock), and claims that said 1,350 shares have been its sole and exclusive property ever since the 11th day of November, 1927. Respondent contends that if appellant desired to contest its claim of ownership of the stock which is the subject of this action, his exclusive remedy was that provided in section 8869 N. C. L., namely, an action "for the recovery of such interest." Appellant takes the position that the remedy provided in said section is not exclusive, and that the law entitles him to bring this action in trover to recover damages for the alleged conversion of said capital stock. On this particular question of law it is our opinion that appellant's contention is correct, and that it is supported by the weight of authority. Hulley v. Chedic, 22 Nev. 127, 36 P. 783, 786, 58 Am. St. Rep. 729; Bond v. Bulgheroni, 215 Cal. 7, 8 P.(2d) 130; Blake v. Blake, 86 Cal. App. 377, 260 P. 937; Phillips v. Price, 153 Cal. 146, 94 P. 617; Rapp v. Whittier, 113 Cal. 429, 45 P. 703; Gordon v. Lemp, 7 Idaho, 677, 65 P. 444; Enright v. Grant, 5 Utah, 334, 15 P. 268; Ryan v. Maxey, 14 Mont. 81, 35 P. 515; Feldenheimer v. Tressel, 6 Dak. 265, 43 N. W. 94; F. Meyer Boot & Shoe Co. v. C. Shenkberg Co., 11 S. D. 620, 80 N. W. 126; Monroe v. Reid, 46 Neb. 316, 64 N. W. 983; Poole v. French, 71 Kans. 391, 80 P. 997; Ludes v. Hood, 29 Kans. 49; Culp v. Hecht, 43 Ohio App. 430, 183 N. E. 437; In re Albright, 55 Misc. 324, 105 N. Y. S. 486; Hart v. Albright, 28 Abb. N. C. 74, 18 N. Y. S. 718; Gere v. Dibble, 17 How. Prac. (N. Y.) 31; Davis v. Turner, 4 How. Prac. (N. Y.) 190; 7 Cal. Jur. 801; 6 Bancroft's Code Prac. and Remedies, 6012, 6013; 8 R. C. L. 4, 5; 10 R. C. L. 1374; Glenn, Creditors'

Rights and Remedies, p. 15, note; 6 Stand. Encyc. of Pr. cc. 185, 186; 5 Encyc. Pl. and Pr. 433; 21 Encyc. Pl. and Pr. 91, 92; note 100 Am. Dec. 502; note 90 Am. Dec. 294.

Where a statute providing a remedy does not create a new right, but merely provides a new remedy for a pre-existing right, it is ordinarily held that such remedy is not exclusive, but merely cumulative. The rule that a new remedy for a pre-existing right will not be regarded as exclusive is particularly applicable where such new remedy is not an adequate one. The provisions of the codes of civil procedure and practice acts, while doing away with the merely formal technical distinctions between the different common-law actions, do not abolish common-law causes of action, or the distinctions between them, or affect the rules of law as to what facts constitute a particular cause of action. Any right may be asserted or any wrong redressed under the new procedure that could have been asserted or redressed under the old, while on the other hand the change does not create any new rights or causes of action, or authorize a recovery where none could previously have been had in any form of action. If a statute gives a remedy in the affirmative, without containing any express or implied negative, for a matter which was actionable at common law, this does not as a rule take away the common-law remedy, but the party may still sue at common law as well as upon the statute. In such cases the statute remedy is regarded as merely cumulative. 1 R. C. L. 323, 324; 1 C. J. 988, 989, 990, 991, 1003, 1004; Pomeroy's Code Remedies (5th ed.), secs. 8, 9, 13; Hulley v. Chedic, supra.

Article 6, sec. 14, of the constitution of Nevada, providing that "There shall be but one form of civil action, and law and equity may be administered in the same action," and section 94 of the civil practice act (section 8592 N. C. L.), providing that "All the forms of pleadings in civil actions, and the rules by which the sufficiency of the pleadings shall be determined, shall be those prescribed in this act," refer only to forms of

actions and sufficiency of pleadings. Such provisions relate merely to distinctions in matters of form, and not to matters of substance. They do not effect any change in the substantive rights of the parties, or in their remedial rights.

■ Section 8869 says that the court or judge "may" authorize the judgment creditor to institute an action. It does not provide either expressly or by necessary implication, that the judgment creditor must apply for such an order, that the court or judge must authorize the judgment creditor to institute an action, or that if so authorized, the judgment creditor must institute such action.

If we should hold that section 8869 N. C. L. provides an exclusive remedy, then it would be necessary to interpret the words "recovery of such interest" as including within their meaning the recovery of the value of such interest. In this connection see Travis Glass Co. v. Ibbetson, 186 Cal. 724, 200 P. 595; also the following sentence in Hulley v. Chedic, supra: "In authorizing an action, the statute, of course, means the kind of action calculated to give the proper remedy."

We have not overlooked Hagerman v. Tong Lee, 12 Nev. 331, or Pershing v. Reno, etc. Co., 30 Nev. 342, 96 P. 1054, but what was actually decided in those cases was that in supplementary proceedings a court cannot require a third party, not a party to the action, to deliver up property to be applied towards the satisfaction of plaintiff's judgment, unless the judgment debtor's ownership is indisputable.

Section 8869 N. C. L. as well as the other sections of chapter 43 of the civil practice act, are designed to assist judgment creditors, not to deprive them of any substantial rights. Justice requires that one whose property is wrongfully converted by another shall have the right to maintain an action either for the recovery of such property or for the recovery of its value. If in the instant case appellant was, on May 31, 1932, the owner of the capital stock in question, and respondent

on said day wrongfully converted said stock, there is no sound reason for saying that appellant was not entitled to sue for the recovery of the value of said stock, or for the recovery of the stock itself, at his option. Robinson Mining Company v. Riepe, 37 Nev. 27, 138 P. 910; State v. Guerrero, 12 Nev. 105; United States Cities Corporation v. Sautbine, 126 Okla. 172, 259 P. 253, 54 A. L. R. 1152, and note; Drug, Inc. v. Hunt (Del. Sup.), 168 A. 87; Fletcher Cyclopedia Corporations (Permanent Edition), secs. 5113, 5114, 5115, 5165; Cook on Corporations (Eighth Edition), sec. 392; Bowers, The Law of Conversion, pp. 118, 119, 120, 122; Thompson on Corporations (3d ed.), secs. 4432–4434. In Bowers' The Law of Conversion, at p. 122, the author says, "the injured owner has an election of remedies— he may follow and reclaim the stock, or he may recover damages for its conversion."

We have now to consider whether appellant's evidence in the district court was sufficient to make out a prima-facie case. We shall first dispose of some preliminary matters before taking up this question.

■ Two of the witnesses called by appellant at the trial were George B. Williams and M. Genevieve Williams. Before placing them on the stand, appellant did not announce that they were being called as adverse witnesses under the statute (section 9420 N. C. L.). This statute reads as follows: "A party to the record of any civil action or proceeding or a person for whose immediate benefit such action or proceeding is prosecuted or defended, or the directors, officers, superintendent or managing agent of any corporation which is a party to the record, may be examined by the adverse party as if under cross-examination, subject to the rules applicable to the examination of other witnesses. The party calling such adverse witness shall not be bound by his testimony, and the testimony given by such witness may be rebutted by the party calling him for such examination by other evidence. Such witness, when so called, may be examined by his own counsel, but only as to the matters testified to on such examination."

Respondent contends that by reason of appellant's failure, before commencing the examination of said witnesses, to announce that they were being called as adverse witnesses under said statute, he was bound by their testimony. In our opinion this position is not tenable. By the express terms of the statute, said witnesses, the president and secretary, respectively, of defendant corporation, were adverse witnesses. Furthermore, the statute does not require that the party calling such witnesses announce that they are being called as adverse witnesses. We think the correct rule is that laid down in Worthington v. People's State Bank of Chula Vista, 106 Cal. App. 238, 288 P. 1086, 1087, cited in appellant's brief. In that case the court says: "Did plaintiff, by failing to announce that the witness was called under section 2055, waive the benefits conferred by that section? That the deposition of an adverse party may be read in evidence and the party using same not be bound by such testimony, even though he fails to announce that it is being offered under section 2055, has been held in Weir v. New York Life Insurance Company, 91 Cal. App. 222, at pages 230, 231, 266 P. 996. We can perceive no reason why the same rule should not apply where the witness is actually present in court. It may be added in passing that nowhere in that section is there any requirement that the person calling such adverse witness must announce that he is called under the provisions of that section." In view of the wording of the statute, and on the authority of the Worthington case, we hold that appellant was not bound by the testimony of the witnesses George B. Williams and M. Genevieve Williams.

■ On motion for nonsuit, whether the evidence is legally sufficient to make out a prima-facie case is a question of law. Tonopah & Goldfield R. Co. v. Fellanbaum, 32 Nev. 278, at page 301, 107 P. 882, L. R. A. 1918D, 584; 64 C. J. 397, 399, 400.

■ A motion for nonsuit presents two questions for the consideration of the court: (1) What facts alleged in the complaint are material to plaintiff's case as he

presents it in the complaint? (2) Has plaintiff made out a prima-facie case by producing substantial evidence in support of his cause as he presented it? Elie v. C. Cowles & Co., 82 Conn. 236, 73 A. 258.

■ On a motion for nonsuit the court cannot say on which side the evidence preponderates; the weight of the evidence is not a relevant consideration. 64 C. J. 399, 400.

■ The evidence, on a motion for nonsuit, is considered most favorably for plaintiff, and interpreted most strongly against defendant. Crossman v. So. Pac. Co., 44 Nev. 286, at pages 296, 297, 194 P. 839; Su Lee v. Peck, 40 Nev. 20, at page 28, 160 P. 18; Weck v. Reno Traction Co., 38 Nev. 285, at page 293, 149 P. 65; McCafferty v. Flinn, 32 Nev. 269, at page 273, 107 P. 225; Burch v. So. Pac. Co., 32 Nev. 75, at page 134, 104 So. 225, Ann. Cas. 1912B, 1166; Fox v. Myers, 29 Nev. 169, at pages 182, 183, 86 P. 793; Patchen v. Keeley, 19 Nev. 404, 409, 14 P. 347; 64 C. J. 402–405, and sec. 396.

In Souza v. Underwriters' Fire Patrol of San Francisco, 116 Cal. App. 13, 2 P.(2d) 200, 201, the court said: "It is elementary that a motion for nonsuit is not to be granted where there is any substantial evidence which, with the aid of all legitimate inferences favorable to the plaintiff, would support a verdict or finding that the material allegations of the complaint are true."

■ We have already pointed out that at the conclusion of appellant's (plaintiff's) evidence, the court below reserved its ruling on the motion for nonsuit made at that time by respondent (defendant), and requested respondent to go on with the case. This respondent did, calling three witnesses and then renewing its motion for nonsuit, which was granted. In a somewhat similar case the court, in Pierce v. Atlantic, Gulf & Pacific Co., 159 App. Div. 258, 144 N. Y. S. 330, held that the subsequent order granting the motion related back to the time it was first made. And see 64 C. J. 419.

■ With the foregoing rules in mind, we now consider whether plaintiff presented any evidence to substantiate the material and essential allegations of his complaint, and particularly the allegations that on May 31, 1932, he was the owner of the shares in question, and that defendant's refusal to transfer said shares to him on the books of the corporation or issue to him a new certificate or certificates for said stock was legally wrongful. Our observations will be confined chiefly to the 1,350 shares hereinbefore mentioned, respondent not questioning appellant's ownership of the five and seven shares which stand in the names of George B. Williams and M. Genevieve Williams, respectively.

At the second execution sale appellant purchased "all the right, title and interest" which George B. Williams and M. Genevieve Williams, or either of them, had in and to said stock on the day the execution was levied. See section 8853 N. C. L. If they or either of them had no interest in the stock at that time, appellant's purchase brought him nothing so far as that particular stock was concerned. If on the other hand they, or either of them, owned the stock exclusively at that time, appellant became the exclusive owner when he purchased at said sale.

Respondent is a Nevada corporation, organized under the general corporation law of 1903 (Stats. 1903, c. 88). Appellant's evidence tends to show that when the company was organized, 2,153 shares of its capital stock (certificate No. 2) were issued to George B. Williams; that said shares were afterwards divided up into four certificates, as follows: No. 5, M. Genevieve Williams, 32 shares; No. 6, George B. Williams, 1,621 shares; No. 7, George B. Williams, 250 shares; No. 8, George B. Williams, 250 shares. The company later took over the stock represented by certificate No. 6, and transferred 271 of the 1,621 shares to George B. Williams—leaving the 1,350 shares which are in dispute in this case.

As heretofore stated, said certificate No. 6, for 1,621 shares (including the 1,350 disputed shares), was marked "Cancelled 11/8/27 in pay't of $135,000 debt.

See certificate No. 16." On the stub is a notation to the effect that this stock was transferred from George B. Williams. There is no evidence showing who made the above markings, nor, except for the figures themselves, when they were made. Appellant, according to his testimony, which must be taken as true in disposing of the question now under consideration, first learned about these markings on certificate No. 6 in the spring of 1932, when George B. Williams and M. Genevieve Williams were examined in the supplementary proceedings already spoken of herein. The stock certificate book had not been in his possession since June 29, 1929, and at that time he had never seen said markings. Appellant's evidence tends to show that said purported cancelation and transfer were not authorized before or on November 8, 1927, nor ratified at any time thereafter. The corporation meetings were held at appellant's office, but his testimony tends to show that no meetings were held or minutes written up after February, 1927. Appellant's evidence tends to show that he was never consulted with reference to the purported cancelation of said 1,350 shares, that he never discussed the matter with Mr. or Mrs. Williams, never advised that it was the proper method for canceling the stock and reducing Mr. Williams' holdings. The evidence of appellant further tends to show that the $135,000 indebtedness was in the main a corporate, not an individual, debt; that certificate No. 6, for 1,621 shares, could not have been canceled in payment of such debt, because 271 of the shares represented by said certificate were reissued after the purported date of said cancelation. Appellant's evidence tends to show that the purported cancelation and transfer of November 8, 1927, were without consideration, and not made in compliance with the provisions of the law under which respondent was incorporated. See sections 42 and 68 of the general corporation act of 1903 (Stats. 1903, c. 88). It appears also that at the time of the purported cancelation the only stockholders of respondent corporation were the immediate members of

the George B. Williams family and household. Appellant's testimony further tends to show that he was refused permission to see the stock books of respondent corporation, and only got to see them when Mr. and Mrs. Williams were compelled to produce them on their examination in the supplementary proceedings.

The foregoing circumstances, considered with other evidence in the case, were and are, in our opinion, sufficient to make out a prima-facie case showing ownership by appellant of the stock in controversy at the time of the alleged conversion on May 31, 1932.

Respondent's admissions in its answer, and appellant's testimony, are clearly sufficient to make a prima-facie case showing that appellant, on May 31, 1932, demanded of respondent that it transfer the stock in question to him, and issue a new certificate or certificates to him therefor; also that respondent refused said demand.

The same is true of the testimony offered by appellant to show the actual value of the stock in dispute. The authorities heretofore cited are to the effect that when such stock has no market value, its actual value may be shown. Appellant offered substantial evidence in this case bearing on the actual value of said stock. The amount of respondent's liabilities, and other matters peculiarly within respondent's knowledge, may properly be offered in its behalf.

Authorities already cited show what constitutes a conversion of corporation stock. Appellant has produced substantial evidence to show that respondent converted the stock in question on May 31, 1932, and that said conversion was wrongful. One of the main considerations to bear in mind on this issue is that we are not dealing here with a case where respondent is in possession of stock claimed by one or more third parties. It is respondent itself claiming to own this stock as against appellant. Respondent is presumed to know all the facts and circumstances upon which its claim is based, and appellant has offered substantial evidence

tending to show that the purported cancelation and transfer alleged to have been made on November 8, 1927, were not in good faith, and void as to creditors.

In view of the authorities hereinbefore cited, and sections 1748 and 1722 N. C. L., and on the showing made by appellant at the trial, we are of opinion that he was entitled to have said shares transferred to him, and a new certificate or certificates issued evidencing his ownership thereof.

Respondent's contention that the only relief appellant would be entitled to, in any event, from the judgment of nonsuit and dismissal, would be a new trial, but that a new trial may not be granted where the court has given judgment of nonsuit, is without merit. Tonopah & Goldfield R. Co. v. Fellenbaum, supra; 64 C. J. 418; 46 C. J. 80, 118–120.

The judgment and order appealed from are reversed, and the cause remanded for a new trial.