(159 App. Div. 258.)

PIERCE v. ATLANTIC, GULF & PACIFIC CO.

(Supreme Court, Appellate Division, Third Department. November 26, 1913.)

1. TRIAL (§ 165*)—MOTION TO DISMISS—DECISION—RESERVATION—EFFECT.

In an action against a master for injuries, defendant, at the close of plaintiff's case, moved to dismiss, but the court reserved decision and refused to rule at that time, and submitted the case to the jury, by which a verdict for plaintiff was returned, when defendant again urged the court to determine the motion for dismissal. The court refused to pass on the question then, but announced an intention to consider the motion thereafter. Defendant's counsel then moved to set aside the verdict on the usual grounds and for a stay, to which the court replied that if he denied the motion to dismiss he would grant the stay. *Held* that, the court having subsequently granted the motion to dismiss, the ruling related back to the time the motion was made, and all the subsequent proceedings, including the verdict, were surplusage.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 373, 374; Dec. Dig. § 165.*]

2. MASTER AND SERVANT (§ 117*)—INJURIES TO SERVANT—SAFE INSTRUMENTALITIES—SAFE PLACE.

Where plaintiff alleged he was struck by the swinging back of a skiff being transferred by a derrick, owing to the fact that the mast was so erected as not to be exactly plumb, but the evidence showed the derrick was equipped with the most approved appliances for keeping the mast erect, and that it was of standard make and in perfect condition, the fact that it was slightly out of plumb was insufficient to show that plaintiff's employer had failed to perform its duty to furnish plaintiff with a reasonably safe place in which to work or to provide reasonably safe appliances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 177, 208; Dec. Dig. § 117.*]

3. MASTER AND SERVANT (§ 127*)—INJURIES TO SERVANT—APPLIANCES—ADJUSTMENT—DUTIES.

Where a master furnished a derrick of standard make and in perfect condition, it was not its duty to keep it in proper adjustment, but such was the duty of the employés for whose use it had been furnished.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 252; Dec. Dig. § 127.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. MASTER AND SERVANT (§ 117*)—INJURIES TO SERVANT—APPLIANCES—LABOR LAW.

Labor Law (Consol. Laws 1909, c. 31) § 18, provides that a person employing or directing another to perform labor of any kind in the erection of any structure shall not furnish or erect, or cause to be furnished or erected, for the performance of such labor, scaffolding, hoists, etc., which are unsafe, unsuitable, or improper, and which are not so constructed, placed, and operated as to give proper protection to the life and limb of a person so employed or engaged. *Held* that, notwithstanding defendant had been engaged in the construction of a barge canal lock under contract with the state which was a structure within such provision of the labor law, that fact did not render defendant liable under such section for injuries to an employé engaged in the work of a longshoreman transferring coal from one point to another by means of á derrick improperly adjusted.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 177, 208; Dec. Dig. § 117.*]

5. MASTER AND SERVANT (§ 129*)—INJURIES TO SERVANT—DEFECTIVE APPLIANCES—PROXIMATE CAUSE.

Plaintiff was engaged in transferring coal by a derrick, and, after he attached a loaded skiff to the derrick, it was lifted about 15 feet above his head and then moved away from where he stood. He turned to tell the time to a fellow workman, and as he did so the load swung back and struck and injured him. *Held*, that the proximate cause of the accident was not the fact that the mast of the derrick was not perfectly plumb, causing the boom to swing back, but rather the negligence of the engineer in lowering the load after it had been raised.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

Smith, P. J., and Kellogg, J., dissenting.

Appeal from Trial Term, Saratoga County.

Action by Albert Pierce against the Atlantic, Gulf & Pacific Company. From a judgment dismissing the complaint and from an order setting aside the verdict for plaintiff, he appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Edgar T. Brackett, of Saratoga Springs (Harold H. Corbin, of Saratoga Springs, of counsel), for appellant.

Charles Irving Oliver, of Albany, for respondent.

WOODWARD, J. This action is brought to recover damages for personal injuries alleged to have been sustained by the plaintiff through the negligence of the defendant. The complaint originally alleged two causes of action, one under the Employers' Liability Act (Consol. Laws 1909, c. 31, §§ 200–204), and the other at common law; no particular difference appearing in the two counts, except that in one there was an allegation of service of the notice required by the statute. During the trial the first cause of action was abandoned, and the questions involved in this appeal relate wholly to the common-law action, supplemented by section 18 of the Labor Law; the case being submitted to the jury upon the theory that the derrick used by the defendant, and which is al-- leged to have caused the accident, was unsafe and improper under the provisions of the section cited.

Before going into the merits of the case, it may be well to point out the situation of the parties. At the close of plaintiff's case the defendant made a motion to dismiss the complaint as to the second cause of action. This motion was denied. It was renewed at the close of defendant's case on the grounds:

"That the plaintiff has failed to prove a cause of action under the allegation of the complaint, or any cause of action whatever. That he has failed to prove the defendant guilty of any negligence, in that defendant failed to provide the plaintiff with a safe place to work or sufficient tools and implements wherewith to work, or a sufficient force to do the work, or in promulgating and enforcing any rules, or any other duty which it might be claimed the defendant owed the plaintiff. That he failed to prove that he himself was free from contributory negligence."

To this motion the court responded:

"It is not a perfectly clear case. I think I will reserve the decision on the motion and allow you to sum up and pass upon the motion later."

Counsel for the plaintiff urged the determination of the motion at that time, but the court refused to pass upon the question, and subsequently submitted the case to the jury upon the theory that it came within the provisions of section 18 of the Labor Law. The jury found a verdict in favor of the plaintiff for $5,000, and upon the report coming in counsel for defendant urged the court to determine the motion for a dismissal of the complaint; but the court refused to pass upon the question at that time, but announced an intention to consider the motion, without objection on the part of any one. With the case in this condition, defendant's counsel moved to set aside the verdict upon the usual grounds, and asked for a stay of 30 days to appeal and 60 days to make a case, and this was granted conditionally, the court saying, "If I deny the motion you may have the stay," but without passing upon the motion to set aside the verdict. Subsequently the court handed down an opinion, and granted the defendant's motion for a nonsuit. The order on which the judgment was entered also provides:

"That the verdict rendered by the jury be, and the same is hereby, set aside upon the sole ground that the complaint of the plaintiff is dismissed, and as to every other ground said motion to set aside the verdict and for a new trial is hereby denied."

[1] The plaintiff urges upon this appeal that this order amounted to a denial of the motion to set aside the verdict upon all other questions than that of the ground upon which the complaint was dismissed, and that if the dismissal was not justified it is the duty of this court to reinstate the verdict. It does not seem necessary to determine this question, although it may be suggested that in contemplation of law there is no verdict. When the defendant made his motion to dismiss the complaint, it was not denied; the motion was held open. When the motion was granted, it related back to the time of making the motion, before the case went to the jury, and there was never any question before the jury to be determined. In other words, the defendant might have relied upon his motion to dismiss the complaint, without making a motion to set aside the verdict, and, if this had been done, it is entirely obvious that there would have been no foundation for the ver-

dict, and it may be doubted if there would have been any reason for setting aside the verdict. This is practically the present position of the defendant. He moved to dismiss the complaint. He had no power to compel action on the part of the court. Subsequently the court submitted the question to the jury, and, with its verdict reported, the court still persisted in refusing to pass upon the motion to dismiss, and the defendant, merely to preserve his rights if his original motion was denied, made the formal motion to set aside the verdict. When the original motion was determined in his favor, there was an end of the case; the complaint had been dismissed, and any purely formal ruling upon the motion to set aside the verdict could not be permitted to operate to deny the defendant his rights. If the motion to dismiss the complaint was improperly granted, there was a mistrial, not a final determination of the rights of the defendant, for he was clearly not called upon to appeal from an order under the provisions of which he was not aggrieved in order to preserve his rights pending the appeal of the plaintiff from the judgment and order, and this view is strengthened by the fact that the plaintiff has appealed "from each and every part of said judgment and order, as well as from the whole thereof." The plaintiff by appealing from the whole of the order in effect questions the right of the court to grant the motion on the ground that the complaint had been dismissed and to deny the same upon the other grounds stated in the motion, and he is hardly in a position to urge that there has been a determination upon the merits of a motion where the exclusive ground stated is sufficient to justify the granting of the same. Indeed, it seems clear that the granting of the motion to dismiss the complaint in effect closed the record there, and that all that happened in the record subsequent to the motion to dismiss is mere surplusage, having no bearing upon this case.

The complaint, for a second cause of action, alleges the incorporation of the defendant, and that it was at the times mentioned in the complaint "engaged in fulfilling and carrying out a certain contract with the state of New York for the construction or improvement of a certain lock known as No. 9 on the Champlain division of the barge canal near Smith's Basin in the county of Washington and state of New York," and this allegation is admitted by the pleadings. It is to be observed, however, that it does not admit that the plaintiff was employed upon this work of construction, and the plaintiff's own testimony, as well as that of the defendant's witnesses, establishes conclusively that the work of constructing this lock No. 9 had been completed two years before, and that certain additional work in connection therewith had been undertaken and carried to a finish about two months before the plaintiff was employed, and that his work had nothing whatever to do with the contract in question, but was confined to that of removing coal from a pile near a switch of the Delaware & Hudson Railroad and placing it upon boats in the canal by means of a derrick. All the other allegations of the complaint are denied by the defendant.

The complaint is open to the criticism of failing to make a plain and concise statement of the facts constituting the cause of action,

but the effect is to set out a common-law cause. It is alleged that on
or about the 5th day of June, 1912:

"The plaintiff, being then in the employ of the defendant, had hooked a
certain flat scow or skiff, so called, into which had been loaded stone or coal
of great weight, onto the cables which ran out from the end of the boom
of a certain steam traveling derrick owned and operated by the defendant
in its said work on said lock No. 9;  *  *  *  that the particular point where
the plaintiff was working and hooked on said skiff as aforesaid was near or
within the radius of the swing of the boom of the said traveling derrick; that,
after plaintiff had hooked on said skiff, the defendant lifted said skiff into the
air by means of said derrick and caused the same and the boom of the
derrick to move away from the plaintiff toward the north or northeast and
the canal; that said coal or stone was to be carried by said derrick over
the canal and lowered and loaded into the boats therein; that, after said
skiff had moved away from the plaintiff a considerable distance, he turned
to attend to the performance of other duties required by the defendant to
be done; that said skiff and boom did not continue in their course toward
the canal, but, without the knowledge or suspicion of the plaintiff, reversed
their direction and swung back toward the plaintiff; that said skiff, loaded
as aforesaid, struck the plaintiff in the back, pushing him along the ground,
and dropped down upon him, pinning him to the earth and inflicting upon the
plaintiff grievous bodily injuries."

The plaintiff sets out in great detail the alleged matters of negli-
gence on the part of the defendant, none of which are proved upon
the trial, as they are alleged, and then sets forth his injuries and de-
mands judgment in the sum of $20,000.

All of the above matters were denied by the defendant, and the
plaintiff's evidence in support of the allegations of his complaint testi-
fied substantially as quoted above in reference to the location of the
derrick, the part he played in fastening on the load, etc.; but, when
it came to what he did in performing "other duties required of him
by the defendant to be done," he said that he stepped back, this par-
ticular load being the last one of the day, and, being asked by one of
the laborers what time it was, turned around with his back to the
engineer who was operating the derrick, took out his watch, and gave
the time, and while so doing he was struck in the back by the skiff
and knocked down. He testified that he had nothing more to do that
day than to wait for the return of the skiff and to take it off when it
returned, so that it appears that he was not called upon to turn away
by any demand on the part of his duties to the defendant, but that
he might have watched the load until it was delivered to the boats
in the canal if he had been disposed to do so, in which event he could
have avoided the accident. This point is not so very important in
itself. He might properly turn around, no doubt, for the purpose of
telling a fellow laborer the time; but the pleadings suggest that he
was compelled by the defendant to turn to other duties immediately,
and the proof in this, as in many other points, entirely fails to come
up to the allegations.

[2] There is no attempt to support the allegations of the complaint
that the accident was due to defects in the materials, or in the con-
struction, of the temporary railroad on which the traveling derrick
was stationed, nor in reference to the alleged defects in brakes, ma-
terials, and workmanship in the construction of the derrick, and the

only approach to anything approximating negligence to be found in the evidence is some testimony on the part of a single witness that the upright mast, from which the boom of the derrick is operated, was at some time—whether before or after the accident does not clearly and positively appear—slightly out of plumb, so that, if the power was removed, the tendency would be for the boom to drift back toward the point where the plaintiff was located at the time of the accident. There was not the slightest evidence that the derrick, or the engines by which it was operated, or any of the tools or appliances, were defective in any way. Indeed, the evidence was to the effect that the derrick was equipped with the most approved appliances for keeping the mast erect, and, assuming it to be true that there was some slight variation from an exact plumb, it cannot be held in an action at common law that this was a violation of the obligation to furnish the plaintiff with a reasonably safe place in which to perform his labor, or that there was any failure in the duty to provide reasonably safe tools, machines, and appliances for the performance of the work.

[3] The machine in and of itself, so far as the evidence discloses, was of standard make and in perfect condition; not a single defect is pointed out, nor is there any suggestion that the plaintiff and his fellow servants did not have all of the tools and appliances necessary for performing any work which might be required in connection with the work, and if the derrick was slightly out of plumb it was clearly not the duty of the master to adjust it. This was a part of the work of the plaintiff and his fellow servants, and the plaintiff himself testifies that he was familiar with work in and around these derricks, and that he had been at work upon this particular job for two weeks, and that he had not discovered anything wrong in its operation.

[4] This situation was clearly evident to the learned trial court, but the plaintiff urged that the case was helped out by the provisions of section 18 of the Labor Law, and the case was, as detailed above, submitted to the jury upon the theory that it was the duty of the master to maintain the derrick in such a manner as to be safe to employés. The statute provides:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

We will assume that lock No. 9 of the barge canal is a structure within the meaning of the statute; but where is the evidence in this case that the defendant ever employed or directed the plaintiff to perform labor of any kind in the erection, repairing, altering, or painting of this structure? The defendant's admission that it was "engaged in fulfilling and carrying out a certain contract with the state of New York for the construction or improvement of a certain lock known as No. 9" is not an admission that it ever employed or directed the plaintiff to perform any labor of any kind in the erection of this structure,

and the undisputed evidence in this case is that he was not employed until after the work of constructing and improving the lock had been completed, and that his whole employment had been in helping as loader and signalman in removing the coal from the switch of the railroad to boats in the canal. In other words, he was, doing the ·work of a longshoreman, and there is no more room for the application of section 18 of the Labor Law to his case than .there would be for applying it to the men who load and unload ships with a similar contrivance at the docks along the Hudson river or in the harbor of New York. Moreover, there is no evidence whatever that the defendant furnished or erected, or caused to be furnished or erected, for the performance of such labor, the derrick in question. The admission that it was carrying out a particular contract was in no sense an admission that it was not engaged in other work. It may, so far as the evidence discloses, have been engaged as a contractor in furnishing coal to the trade generally, or in any other kind of business, in addition to the performing of the contract with the state of New York, and there is nothing to show that this derrick was designed for use for any other purpose than that for which it was employed during the two weeks that the plaintiff worked for the defendant. The plaintiff does not claim to have performed any work in the construction of anything. He tells us distinctly that he worked at moving this coal for the two weeks of his employment, incidentally helping in passing boats through the completed locks, and this was clearly the only work for which the derrick was used at any time while the plaintiff was in the defendant's employ; and what may have been its use prior to that time cannot help him in the present case.

[5] But assuming that the case came within the statute, and that the mere fact that the mast was out of plumb so that the tendency was for the boom to reverse its action in the absence of sufficient power, the evidence in this case is that there were two engines used in the operation, one to lift the load and the other to swing the boom. Both of these engines were operated by one man, and both received their power from a single boiler. The evidence is to the effect that it required 40 to 50 pounds steam pressure to lift the load and only about 10 pounds to swing it. The plaintiff testifies that the load was raised about 15 feet above his head, and then moved about 15 feet away from where he stood, measuring on the ground, before he turned away. This established that the steam power was strong enough to raise the load, and, as it only required about one-fourth of the pressure to swing the load which was held suspended by friction or the brake in the control of the defendant's engineer, a fellow servant at common law, it follows that the engineer must have reversed his engine or the boom could not have turned back against the power of the engine. But assume that it did, by some unaccountable freak of mechanics, turn back upon itself, if it was 15 feet above the plaintiff's head it would not have touched him, for it is not pretended that anything broke, or that the skiff slipped from its hooks; so that the most that could have happened merely from the boom turning back toward the plaintiff would have been to float harmlessly over his head.

The proximate cause of the accident could not have been the alleged defect in the plumb of the mast; if it had stood perfectly straight and the boom had turned back, it would not have been different, so far as the plaintiff was concerned, if it had not been lowered. The proximate cause of the plaintiff's injury was not the reversing of the boom's motion, but the fact that the load, which had been lifted to a height of fifteen feet, was lowered so that it struck the plaintiff in the back as it turned toward him, and we are not told what caused the skiff to reach this lower point; how it came to be only three or four feet above the ground. No defect being pointed out in any of the working parts of the machine, the presumption must be that the engineer in some manner let loose of his brakes, and this, with the swaying of the heavy draught, may have caused the reversed motion of the boom. But this is mere guesswork; there is no evidence in support of the theory, and the plaintiff has clearly failed to establish the cause of the accident, or to show that the defendant had neglected any duty which it owed to him under the laws of this state.

The judgment and order appealed from should be affirmed, with costs. All concur, except SMITH, P. J., and KELLOGG, J., who dissent.