DOROTHY C. WEEKS, APPELLANT, *v.*
RUSSEL S. WEEKS, RESPONDENT.

No. 3928

October 26, 1956.                    302 P.2d 750.

(Petition for rehearing denied December 10, 1956.)

*Robbins & Denton* and *F. Grant Sawyer,* of Elko, for Appellant.

*Vaughan & Hull,* of Elko, for Respondent.

## OPINION

By the Court, BADT, J.:

Dorothy C. Weeks, plaintiff and appellant, obtained a decree of divorce from Russel S. Weeks, defendant and respondent. The pleadings and the pretrial order made by the trial court put in issue the question as to whether certain securities, standing in the name of the parties as joint tenants, and certain purebred cattle purchased by draft on their joint account were jointly owned by the parties or comprised the separate property of the husband. The court made findings of fact, conclusions of law and judgment to the effect that each of such items was the separate property of the husband. For each of such findings the defendant assigns error. She further assigns error in the court's finding and judgment to the effect that a certain ranch property on which the parties had resided and which she desired to have assigned to her in division of community property had been so organized and integrated into a ranching unit with the other ranch properties that it could not be partitioned from the other properties. We treat of these assignments separately.

1. This item involves certain securities comprising the capital stock of some twelve corporations of the value of approximately $120,000, inherited by defendant from the estate of his deceased father. Appellant concedes that these securities so inherited were the separate property of defendant at the time of such distribution, but points out that subsequently thereto the title to these

securities was, at defendant's direction, changed and placed in the name of both parties as joint tenants with right of survivorship. At the time of the trial the stock certificates remained so registered. The pretrial order recited: "It is admitted all of the securities * * * are registered as follows: Russel S. Weeks and Dorothy Weeks, as joint tenants with right of survivorship and not as tenants in common." These securities were held by the First National Bank of Nevada, Reno, Nevada, under an "agency agreement." This agreement, executed by Russel S. Weeks and Dorothy Weeks, his wife, "as principals" and the bank "as agent", called for the holding, investment, disbursement or other disposition of the property deposited by the principals, or its proceeds, upon the written order "of the depositors"; that directions to the agent should be in writing "given by the depositors"; that the agent should not invest any moneys subject to the agency except upon direction "of the depositors"; that the agent would pay the income from the property "to the depositors" and would hold the same to the further "order of the depositors"; that semiannual statements would be furnished "to the said depositors". The agency agreement further provided: "This agency may be terminated at any time by either party upon written notice." The term "either party" clearly refers to the depositors on the one hand and the bank on the other. Upon termination of the agency the property is to be returned "to the depositors". Authorization to the agent to execute certificates of ownership etc., as required by regulations of the treasury department, is given by "the depositors".

Respondent admits the presumption of gift arising out of these circumstances, Peardon v. Peardon, 65 Nev. 717, 201 P.2d 309, but insists that such presumption is rebuttable (which is not disputed), and that the same has been successfully rebutted by the following circumstances, namely, (1) that there was no donative intent in the husband, (2) that there was no delivery and (3)

that the so-called gift did not become immediately effective—all three of such elements being necessary to a gift, and the failure of any one of them being destructive thereof. In contending that there was no donative intent, respondent points to his testimony to the effect that he desired to avoid costs of probate and administration in the event of his death and was advised by his attorney (not his present counsel) that this could be accomplished by placing all of his property in the "joint ownership" of himself and his wife, with the right of survivorship. This was done. And we may note here that other real and personal property acquired by the parties during coverture, and concerning the community nature whereof there is no question, was likewise held by the parties in joint tenancy. In any event, we find nothing here but an unexpressed intention (giving the testimony its fullest effect) that despite the transfer of the securities to the parties in joint tenancy the respondent should remain the sole legal and beneficial owner, or that it should be ineffective except in the event of his death. His wife testified that he expressed no such intention to her and he did not deny this testimony. It is further asserted by the husband that the relations of the parties at the time indicate the lack of donative intent—that the parties were having serious marital and personal difficulties prior to the time of transfer of the stock; that appellant was keeping a diary listing objectionable acts on the part of respondent; that they had continual differences and arguments concerning their son; that, as a matter of fact, respondent was looking to these securities to see him through his old age in the event he should become incompetent as was the case with his father; that the parties were also having disputes with reference to appellant's refusal to have more children. Respondent insists that under such circumstances it is entirely unreasonable to credit him with donative intent.

It is our opinion, however, that the circumstances thus

recited fall far short of the "clear and convincing proof" essential to rebut the presumption of a gift.

Nor are we impressed with the contention that there was no delivery. We have above quoted some of the terms of the agency agreement with the bank. In this we find no distinction whatsoever in the agency thus created on behalf of both parties as principals. There was no greater possession or control in the husband than in the wife. The wife's signature was, to a like degree with the husband's, essential in all instructions to the bank concerning the handling of the securities. That respondent recognized this even at the time of the trial is evident from his testimony. The securities were apparently transferred directly from the estate of his father to appellant and respondent as joint owners, and respondent testifies: "We had them transferred into a joint ownership * * * we deposited them in an agency with the First National Bank in Reno. The 'joint tenancy conversation' was had concerning the securities shortly after we received them * * *. We had dividends coming. * * * [An agency was recommended] that fit our purpose [under the agency agreement], that would give us an accounting twice a year * * * and would deposit dividends to our account. We held [certain later acquired bonds] and I took them to Reno to add to the stock account."

What has been said is an equal answer to the contention that the gift must fail because of lack of immediate delivery. Such delivery was accomplished by delivery to the bank as agent for both parties. In such lack of clear and convincing proof to the contrary, the presumption of gift must prevail. Peardon v. Peardon, supra, and cases therein cited.

Before leaving this subject, it may be well to comment on respondent's contention that he never intended to

effect such a title situation as now confronts him. In Mullikin v. Jones, 71 Nev. 14, 278 P.2d 876, 881, we used language which is rather apt here: "The benefits and dangers, the advantages and disadvantages of joint tenancies by husband and wife have been for many years the subject of wide discussion among lawyers, banks, trust companies and others, and in later years with a special view to federal tax liabilities. A choice of the tenancy must be made, and we may assume that it will sometimes be made inadvisedly or that later developments may indicate that the choice seemingly advantageous at the time, has resulted in loss or hardship." Here the respondent by gift created a joint tenancy for the purpose of gaining certain advantages which such tenancy provided. The fact that respondent had in mind the advantages to be gained does not weigh against the creation of such a tenancy, but in its favor. The fact that he did not have in mind the disadvantages of joint tenancy is unfortunate but cannot act to destroy the tenancy or avoid the gift.

The trial court was in error in concluding that the securities standing in joint tenancy were respondent's separate property.

Plaintiff's next assignment of error deals with the court's finding that certain purebred livestock was the separate property of the husband.

In the pretrial order it was recited:

"In October, 1951 defendant received $31,815.59 from his father's estate. The check was deposited in the joint bank account of the parties, which account at the time was overdrawn $900. This deposit was October 25, 1951. On November 13, 1951 balance in the account was $17,890. On that date there was deposited a check for $14,508.71, payment of ranch cattle sold. Such ranch cattle were community property. In December, 1951, against plaintiff's disapproval, defendant wrote checks for $16,855.00 to pay for a small herd of purebred cattle. The market price for purebred cattle has depreciated.

Of the remaining herd, and increase now on hand, the value is $8,400.00."

After making findings of fact to the above effect, the court made its conclusions of law which (after finding the securities to be the separate property of the defendant as above discussed) found the purebred herd to be the separate property of the defendant.

The purebred cattle were purchased less than two months after the deposit in the bank of the $31,000 inherited by defendant from his father's estate; defendant brusquely refused to accede to plaintiff's suggestion that they acquire a new house with such moneys; he overruled her protests against the purchase of the purebred cattle; he insisted that it was his business and his cattle; he obtained certificates of registration of the purebred cattle (identified by tattoo marks) in his individual name. When he deposited in the joint bank account the proceeds of his inheritance, the community funds were exhausted —in fact, $900 overdrawn. The community funds deposited to the joint bank account in the same period were for the most part earmarked for specific purposes and were disbursed for such specific purposes. All of the foregoing circumstances, including the tracing of the title to the cattle back to defendant's separate funds, furnished ample support to the court's finding of his separate title thereto.

In assigning error in the court's finding that the purebred livestock were the separate property of defendant, plaintiff contends that by depositing the money in the joint account defendant made a valid, completed gift to plaintiff, and that the purebred cattle, purchased out of such deposit became part of the community. In support of this assignment, she quotes the following from Beach v. Holland, 172 Or. 396, 142 P.2d 990, 995, 149 A.L.R. 866 (which in turn is a quotation from 7 Am.Jur. 304, Banks, 431): "The majority of cases, however, hold that if the intention of the donor is to vest a present right

to share in the deposits constituting the joint account, such an act constitutes a gift that can be sustained." The opinion opens with the statement: "The evidence clearly shows, and counsel for the defendant concede in their brief, that the action of the deceased, in causing her bank account to be changed to a joint account in the names of herself and the plaintiff, was taken, not to serve the convenience of the deceased, but with a donative purpose." The annotation to the Beach case found at 149 A.L.R. 879 and supplementing the annotation in 48 A.L.R. 189, 66 A.L.R. 881, 103 A.L.R. 1123, and 135 A.L.R. 993, presents to us literally hundreds of cases, under varying conditions, different theories, statutory provisions, relations of the parties, presumptions to be indulged and the conclusiveness or rebuttability thereof, nature of the contract with the bank when making the deposits, the distinctions between savings deposits and commercial accounts (indeed the Beach case involved a savings account in contrast to the nature of the instant account), yet appellant asks us to reverse the trial court upon the citation of the Beach case alone, and in which the donative intent was conceded. Respondent in turn has presented no authorities whatsoever and does not even comment on the Beach case. Under the circumstances the court will undertake no individual research. In the instant case the deposit in the joint account was as consistent with a purpose of banking convenience for the depositor as with donative intent. Even if we assume the presumption of gift in the nature of the deposit, the facts above recited are sufficient to rebut the theory of gift and to support the court's holding of the defendant's individual ownership of the purebred cattle. We accordingly find no merit in this assignment.

Appellant's third and last assignment of error is the court's refusal to assign to her a certain ranch property on which the parties had resided, with reference to the entire inventory of real and personal community property. The court found the ranch and range lands, buildings and improvements, supplies and equipment to be

worth $180,000; livestock $56,008; a promissory note $12,000; cash on deposit $15,522.17; an automobile $2,320; all of which, subject to an encumbrance of $45,000 for payment of the Ralph ranch, left a net value in the sum of $220,850.17. The court then found: "The above set-out ranch property has, since the acquisition of the Ralph ranch, the last of several ranches acquired during the marriage, been organized and integrated into a ranching unit. This ranching unit is capable of producing more cattle, when so operated, than the component parts whereof would produce and support. A partition of these ranching properties would not only decrease the value thereof, but would require the expenditure of a substantial sum of money for the purchase of necessary equipment for fencing and the building of improvements."

Although there is sentimental appeal in plaintiff's desire to have assigned to her the Ralph ranch, heretofore owned by her parents, upon which she spent her childhood, sold by her parents to herself and husband on very liberal terms, it cannot be said that the court's finding is without substantial support in the evidence. This assignment of error is therefore without merit.

A fourth assignment of error, having to do with the admission of evidence in connection with the ownership of the securities, does not require consideration in view of our holding upon that item.

In remanding this case, a further observation is necessary. We have statutory provisions to guide the court in making disposition of community property of the parties. No such disposition may be made by us in the first instance. Our holding that the securities are the joint property of the parties may well disturb the factual situation upon which the trial court relied in making its final disposition of the property of the parties. On remand, therefore, the trial court must be left at liberty

to make a final order for such disposition, after such hearing and upon such notice to the parties as may appear proper.

Reversed and remanded with instructions to modify the judgment by providing that the securities therein listed are owned by the parties in the manner actually set forth in the First National Bank of Nevada agency account No. 281, namely, by Russel S. Weeks and Dorothy Weeks, as joint tenants, with right of survivorship and not as tenants in common, and for further proceedings in accordance with this opinion.

MERRILL, C. J., and EATHER, J., concur.