519 So.2d 891 (1988)
Stanley Malcolm CARPENTER
v.
Anne Hudson CARPENTER.
No. 57460.
Supreme Court of Mississippi.
February 3, 1988.
Rehearing Denied February 24, 1988.
*892 Lawrence C. Gunn, Jr., Lee P. Gore, Hattiesburg, for appellant.
Frank D. Montague, Jr., Gray, Montague & Pittman, Hattiesburg, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ZUCCARO, JJ.
PRATHER, Justice, for the Court:
The appropriateness of alimony and attorneys fees' awards in a divorce action when the wife's net worth exceeded that of her husband is the subject of this appeal from the Chancery Court of Forrest County. This Court reverses the chancellor's allowance of both alimony and attorney's fees.

I.
Stanley Malcolm Carpenter and Anne Hudson Carpenter were married on December 28, 1956, and to their marriage four children were born. At the time of the divorce, the children's ages were twenty-six (26), nineteen (19), seventeen (17), and twelve (12). The parties separated and she filed for a divorce in 1983.
At the time of the divorce in 1985, Stanley Carpenter was 50 years of age, a certified public accountant, who spent most of his professional life as an accounting instructor at the University of Southern Mississippi. He retired from the University in 1983. At that time, he established a private accounting practice in Hattiesburg. The practice was a partnership which was in the process of dissolution, with related litigation in progress.
Respectively, Ann Carpenter was 49 years of age at the time of the divorce. She has a Master's Degree in Early Childhood Education. However, she had elected in recent years not to work in her chosen field. Rather, at the time of the divorce, she was a door to door saleswoman of first aid supplies.
Neither of the parties suffers from any kind of physical or mental disability. Their twelve year old son has a learning disability.
Joint custody of the minor children was ordered. The seventeen year old daughter was in the physical custody of her mother, and $300.00 monthly child support was ordered to be paid by her father to her mother.[1] The father had physical custody of the nineteen year old daughter and twelve year old son, and although the order does not provide, it is assumed that the father totally supported them. The jointly owned residence of the parties was occupied by the husband with the two minor children in his physical custody, and the husband was making the mortgage payment on the residence of $923.48 monthly. Mrs. Carpenter testified that the fair rental value of the residence was $450-$500 monthly.
The issue of divorce was uncontested, and Mrs. Carpenter was granted a divorce, $300.00 alimony per month for ten (10) years, and $2,500.00 attorney's fees. The issue of these latter two awards is the subject of this appeal. Also, the chancellor granted a stay on the alimony award pending this appeal.
The basis for objection to these two monetary awards is twofold: (1) the separate estate of Mrs. Carpenter and (2) the financial inability of Mr. Carpenter.

II.
Regarding Mrs. Anne Carpenter's separate estate, the record reveals that Mrs. Carpenter had monthly earning of $800.00 and was a joint beneficiary with her two sisters of a substantial trust. Annual income from the trust ranged from a high of $25,000.00 in 1979 or 1980 to a low of only $1,600.00 one other year. The record is extremely inadequate on the exact details of the trust income. However, Mrs. Carpenter testified that the trust was valued *893 at a quarter of a million the last time she knew of its value. Additionally, the trustees has the right to invade the trust corpus on Mrs. Carpenter's behalf. Apparently, a $12,500.00 trailer and lot in Hancock County was an asset of Mrs. Carpenter's which had come from the trust, and was debt free. Mrs. Carpenter testified that the total value of the trust was at least $250,000; the record suggests that its value is in excess of that.
It is difficult to accurately deduce from this record the exact extent and nature of the property of these parties. More information comes from the briefs of counsel, but upon which this Court cannot rely. However, from the evidence, it appears that the Carpenters are joint owners of a residence and land of some six acres and farm of 98 acres with buildings and equipment and subject to a joint indebtedness which Mr. Carpenter is totally paying.
Based upon facts at the hearing, appellant's brief contains an analysis of the net worth of the parties, dividing the jointly owned property and indebtedness as follows:

 ASSETS
 STAN ANNE
 Cash Receivables $ 1,800.00 -0-
  fees 3,600.00 -0-
 Investment in stocks 2,000.00 -0-
 Automobiles 6,500.00 6,500.00
 98 acre parcel (one-half interest) 98,000.00 98,000.00
 Residence (one-half interest) 67,500.00 67,500.00
 Furniture and furnishings (one-half interest) 50,000.00 50,000.00
 Farm buildings (one-half interest) 12,500.00 12,500.00
 Farm equipment (one-half interest) 2,500.00 2,500.00
 Investment in Magnolia Simmental Farm 67,500.00 -0-
 Trailer & Lot in Hancock County -0- 12,500.00
 Interest in Willetta Hudson Trust (1/3 int.) -0- 83,333.33
 TOTAL ASSETS $311,900.00 $332,833.33
 LIABILITIES
 Mortgage payable to Federal Land Bank
 (1/2 of balance) (home) 45,521.00 45,521.00
 Note payable to Perry County Bank
 (signature note) 15,000.00 -0-
 Note payable to Deposit Guaranty National
 Bank (office building) 84,166.00 -0-
 Note payable to Citizens Bank (office
 equipment) 57,727.00 -0-
 Note payable to Magnolia Simmental
 Partnership (farm) 10,000.00 -0-
 Note payable to First Guaranty Savings &
 Loan (farm) 39,072.00 -0-
 Note payable to Deposit Guaranty National
 Bank (signature loan) 9,235.70 -0-
 Note payable to Carmichael Chrysler (R58) -0- 8,170.20
 Total Liabilities 260,721.70 53,691.20
 Net Worth $ 51,178.30 $279,142.13

Counsel for Mr. Carpenter points out that the July 31, 1983 balance sheet of the parties shows that they had a net worth prior to the filing of this action of $517,156.00.
From this record it appears that Mrs. Carpenter's net worth exceeded Mr. Carpenter's by a substantial margin.

III.
Concerning Mr. Carpenter's inability to pay alimony, the Court first notes that by his answer and cross-claim, Mr. Carpenter states that he should be required to pay lump sum alimony in periodic installments until Mrs. Carpenter can obtain gainful employment. Therefore, Mrs. Carpenter argues *894 that the issue here is not the wife's entitlement, but the amount thereof.
Mr. Carpenter's financial condition at the time of the divorce was critical. He was seeking to avoid bankruptcy; he was making all payments on the joint indebtedness; he had physical custody and support of two children and was ordered to pay $300.00 for a third child; his accounting partnership was dissolved and in litigation; his 1980 adjusted gross joint income was $29,021.53; his 1984 income reflected a loss of $3,983.32; his total indebtedness was $362,146.27, (which including his wife's portion of jointly owned property) excluding an arrearage of temporary alimony and child support previously ordered of some $4,000.00.

IV.
In Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147 (1955), this Court required the chancellor to consider several factors in awarding original sum of alimony and child support. These factors are as follows:
(1) The health of the husband and his earning capacity;
(2) The health of the wife and her earning capacity;
(3) The entire sources of income of both parties;
(4) The reasonable needs of the wife;
(5) The reasonable needs of the child;
(6) The necessary living expenses of the husband;
(7) The estimated amount of income taxes the respective parties must pay on their income;
(8) The fact that the wife has the free use of the home, furnishings, and automobile; and
(9) Such other facts and circumstances bearing on the subject that might be shown by the evidence.
Id. 84 So.2d at 153.
With the relative net worth of these parties in mind and their corresponding obligations, Stanley Carpenter asserts that the chancellor was manifestly in error in awarding alimony and attorney's fees. In so alleging, Mr. Carpenter distinguishes his factual situation from other cases decided by this Court. For example, in Schilling v. Schilling, 452 So.2d 834 (Miss. 1984), the husband had a net worth of $750,000.00 and earned a six figure income. Respectively, the wife in Schilling had no assets and was unemployed.
In addition to comparing the case at bar to Schilling, counsel also points to the case, McKee v. McKee, 418 So.2d 764 (Miss. 1982). In McKee, alimony was awarded to a millionaire's wife who had absolutely no means of earning a living.
With the foregoing argument in mind, counsel for Mr. Carpenter asserts that Stan has a right to lead as normal a life as possible with a decent standard of living. See McKay v. McKay, 312 So.2d 12 (Miss. 1975); Nichols v. Nichols, 254 So.2d 726 (Miss. 1971). Therein, the effect of the chancellor's ruling in this case is to change Mr. Carpenter's financial situation from difficult to destitute.
In addition, counsel for Mrs. Carpenter agrees that the factors in Brabham are essential. These factors were recently reaffirmed and enumerated in Tutor v. Tutor, 494 So.2d 362 (Miss. 1986).
Applying the Brabham factors to this record, this Court notes a disproportionate weighting against Mr. Carpenter's position. Taking into account the entire sources of income of both parties, it is apparent that the wife's net worth is greatly in excess of her husband's. This fact is true considering the admitted value of her trust asset. Notwithstanding the assertion of the trust's unvalued worth, the reasonable needs and living expenses of the husband and his two children are much greater than that of Mrs. Carpenter and the one child (who is now married).
Thereto, this Court must consider the assumption of the husband of the joint indebtedness of both parties, notwithstanding the increase of his wife's equity in this joint property. Other factors to be considered are the distressful financial condition of the accounting partnership and litigation connected therewith. Keeping the foregoing factors in mind, the wife's earnings, *895 assets, educational background, and health are all in her favor.
An analysis of the foregoing facts lead this Court to the conclusion that the amount of alimony was manifestly in error, and therefore reverses the $300.00 per month award for ten years. In drawing this conclusion, this Court reviews Mrs. Carpenter's argument that her husband requested in his pleading that he be ordered to pay alimony for an adjustment period until Mrs. Carpenter could secure employment. She contends, therefore, that the question is not to her entitlement to alimony, but the amount of alimony only. This Court disagrees that this record shows her entitlement at all. Thereto, there is no useful purpose to remand for rehearing on her needs as to a temporary period of adjustment following the divorce. The divorce was filed in April 1983 and heard in April 1985. The adjustment period in fact occurred during that time. Certainly in 1988 after nearly three years in the appellate process, the adjustment period has passed. This Court, therefore, reverses the alimony award and renders in this Court.

V.

DID THE TRIAL COURT ERR IN AWARDING ATTORNEY'S FEES?
In addition to Mr. Carpenter's foregoing argument, counsel for Mr. Carpenter also contests the award of attorney's fees of $2,800.00. More specifically, Mr. Carpenter contends that the evidence does not justify this award.
Appellant's counsel cites Cameron v. Cameron, 276 So.2d 449 (Miss. 1973) and Nichols v. Nichols, 254 So.2d 726 (Miss. 1971) as support of this argument. These two cases stand for the proposition that if a wife is financially able to pay her attorney, she is not entitled to an attorney's fee award.
In addition to this argument, Mr. Carpenter contends that there must be some evidence to justify the award. In McKee v. McKee, 418 So.2d 764 (Miss. 1982), this Court stated:
In determining appropriate amount of attorney's fees, a sum sufficient to secure one competent attorney is the criteria by which we are directed. .. . The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the question at issue, as well as a degree of responsibility involved in the management of the cause, the time and labor required, the usual customary charge in the community, and the preclusion of other employment by the attorney due to the exceptions of the case.
Id. at 767. Therein, Mr. Carpenter states that on this record, there is no evidence justifying the chancery court's award of $2800.00 attorney's fees to Mrs. Carpenter for this hearing.
In McKee, this Court stated:
We recognize that the matter of determining attorney's fees in divorce cases is largely entrusted to the sound discretion of the trial court. Walters v. Walters, 383 So.2d 827 (Miss. 1980).
Id. at 767.
In line with this Court's reasoning that the relative financial conditions of these parties indicated that manifest error was committed in allowance of the amount of alimony, the Court applies the same reasoning regarding attorney's fees. The liability of Mr. Carpenter for his former wife's attorney's fee is reversed and rendered.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS AND DAN M. LEE, P.JJ., and ROBERTSON, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
SULLIVAN, J., not participating.
NOTES
[1] The briefs reflect that this child has married since the hearing, and that the father is not obligated to pay this monthly sum at present.