568 So.2d 255 (1990)
Keith Parker POWERS
v.
Margaret Jean Eager POWERS.
No. 07-CA-59135.
Supreme Court of Mississippi.
May 30, 1990.
Rehearing Denied October 17, 1990.
*256 James P. Cothren, Cothren & Pittman, Jackson, for appellant.
William D. Boerner, Boerner & Breeland, Brookhaven, for appellee.
Before ROY NOBLE LEE, C.J., and PITTMAN and BLASS, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Margaret Jean Eager Powers was granted a divorce from Keith Parker Powers on November 2, 1987, in the Chancery Court of Copiah County. The Court also granted her custody of Robert Powers, fourteen year old child of the parties, who was in the ninth grade, and ordered Mr. Powers to pay $700.00 per month child support and $750.00 per month alimony. Mrs. Powers was allowed attorney's fees in the sum of $2,000.00. The lower court refused to declare Mr. Powers to be 100% equitable owner of a 112 acre tract of property, which the parties jointly owned. He has appealed from the judgment and assigns three errors in the trial below.

FACTS
The parties are graduates of the University of Southern Mississippi, appellee with a Bachelor of Science Degree in Education and appellant with a Bachelor's Degree in Accounting. They were married August 31, 1969, and Robert (Robbie) Powers is the only child born of the marriage.
In 1977, the parties began having domestic difficulties and appellant moved out of the home for approximately four or five months. They reconciled and in 1978 appellant's Aunt Grace, who looked upon appellant practically as her son, deeded him 112 acres of land as a gift. The parties decided to build a home on the land and obtained financing from the Federal Land Bank for that purpose. The bank required the title to be jointly held in order for the loan to qualify, and, accordingly, appellant conveyed the land to appellee and appellant as an estate by the entirety with rights of survivorship and not as tenants in common.
The parties separated on May 25, 1987. Appellant called appellee on June 2, 1987, and informed her that he was having an adulterous affair with a certain woman in Crystal Springs and requested that she file for a divorce against him on the ground of irreconcilable differences. On June 17, 1987, appellant filed a complaint in the Chancery Court of Copiah County for divorce on that ground and amended the complaint on July 24, 1987, charging habitual cruelty and inhuman treatment and adultery or, in the alternative, irreconcilable differences. The case was tried on October 20 and 21, 1987. Appellant was *257 called to the stand as an adverse witness. He admitted acts of adultery. The Chancellor held that appellee was entitled to a divorce on that ground and the divorce was granted.

LAW

I.

DID THE LOWER COURT ABUSE ITS DISCRETION AND COMMIT ERROR IN AWARDING AN EXCESSIVE AMOUNT OF MONTHLY ALIMONY AND CHILD SUPPORT?

II.

DID THE LOWER COURT ABUSE ITS DISCRETION AND COMMIT ERROR IN ORDERING APPELLANT TO PAY $2,000 ATTORNEY'S FEES FOR APPELLEE?
At the conclusion of the trial, the Chancellor issued his bench opinion and made the following findings:
1) Mr. Powers had committed adultery and Mrs. Powers was entitled to a divorce on the ground of adultery.
2) The 112 acre tract of land was jointly owned by the parties and the debts owed on the property were joint debts.
3) Mrs. Powers was entitled to custody of the parties' minor child, Robert, and was entitled to child support in the amount of $750.00 a month and alimony of $750.00 a month[1]. The chancellor stated:
I think he's making between $2700.00 and $2800.00 a month. He's made between $2500.00 and $3,000.00 a month, and when I give you $1500.00 a month, I'm giving you about half of what Mr. Powers says he's making. Mr. Powers is capable of earning $50,000 a year, easily, as a Certified Public Accountant. He's a man of great ability. He's established a fine practice, and he is just now going to have to devote his attention and time to managing his business and producing and taking care of these items that I'm finding that he needs to take care of.
4) Mrs. Powers was awarded sole possession of the house until Robert graduated from high school or until she remarries, whichever is earlier. She was also entitled to full use and possession of the '85 Buick.
5) The appellant was to continue in force the $100,000 and $150,000 insurance policies and make Robbie the beneficiary. Margaret was to make the payments on the house and car.
6) The chancellor denied the appellee's request for an equitable 1/3 interest in the appellant's business, real property, and an interest in the appellant's part of Crystal Investments.
7) On the subject of attorney's fees the chancellor stated:
All right, now, attorney's fees. I find that Mrs. Powers is not able to pay her attorney's fees, and the bill which Mr. Boerner has submitted here should be allowed to the extent of $2,000. She's paid $500.00, which has got to be repaid, and so Mr. Boerner will be paid the sum of $2,000.00 for his attorney's fee. The costs of court will be taxed against Mr. Powers.
8) The chancellor imposed a lien on the appellant's undivided joint interest in the 112 acres and the home to secure payment of the child support, alimony and attorney's fees.
9) The parties mutually agreed on a division of personal property accumulated during the marriage.
On November 2, 1987, the lower court entered its final judgment of divorce. However, on November 5, 1987, the appellant petitioned the court to re-designate part of the alimony award to be child support and the court granted the petition and reallocated child support $950.00 and alimony to $500.00.
The principle is elementary that an award of alimony and child support is a matter within the discretion of the Chancellor *258 and that this appellate court will not reverse unless the Chancellor was manifestly in error in his finding of fact and manifestly abused his discretion. Carpenter v. Carpenter, 519 So.2d 891, 894-895 (Miss. 1988); Massey v. Massey, 475 So.2d 802 (Miss. 1985); Hopton v. Hopton, 342 So.2d 1298, 1300 (Miss. 1977).
Appellee teaches school at Copiah Academy with a net take home pay of $832.18 per month. From the record, it appears that the appellee has no separate estate except for her undivided one-half interest in the parties home and undivided one-half interest in the 112 acres of land. The appellee provided the trial court with a detailed summary of monthly living expenses for herself and the parties' son by using a check spread. From this spread, the appellee determined that the monthly living expenses for herself and the parties son was $2,625.93.
The appellant is a certified public accountant and he, along with a partner, operate an accounting firm known as Powers-Berry & Company in Crystal Springs. As of the date of trial, the appellant and Mr. Berry were the only CPA's in Copiah County and their accounting practice had been growing steadily year by year. The firm had consistently grossed more money each year since 1984, and in 1987 they had their best year yet. The appellant was receiving from Mr. Berry a yearly amount of $3,312.00 which represented a buy-in payment toward a purchase of an interest in the partnership. There was a total of 8 payments and Mr. Berry had six payments remaining. The appellant testified that he paid himself a monthly draw of approximately $2,500.00 per month.
The appellant's investments included a one-fifth interest in Crystal Investment, Inc. which owned two rental properties with a market value of about $14,000.00-15,000.00 each and a total mortgage balance of between $12,000 and $13,000. The appellant had invested $16,400.00 in an oil share which in the two years prior to trial had produced no income. He also owned Mississippi Federal Co-op stock from which he received an annual dividend of $92.00. At the time of the divorce, the appellant was the sole titleholder to an eight (8) acre tract of land on which sat a house in which the appellant's Aunt had lived before her death, and which the appellant valued to be worth $18,000.00 "on the high side".
The appellant initially owned the building from which he operated his accounting practice. However, he apparently sold Mr. Berry and Mr. Lawrence, an attorney, an interest in the building. He stated that the building was probably worth about $100,000.00 but he had built up no equity. The appellant estimated his monthly expenses to total $1,841.00.
At trial, the appellee set about trying to establish the appellant's income, first by establishing his monthly draw. Then, by an analysis of the appellant's bank statements, she attempted to show that there were substantially more deposits into the appellant's bank accounts than the appellant alleged he withdrew from the partnership each month. Financial data and charts drawn up by the appellant, submitted to the appellee in discovery, and introduced as exhibits at trial, revealed that for the year 1987, with only two months left in the year, the appellant anticipated gross receipts from Power-Berry Co. to be $158,602.00. Based on the approximately $2,500 monthly draws he had made prior to the date of the trial, the appellant anticipated paying himself approximately $30,000.00 and his share of the net profit from the partnership would be $25,376.00. When these figures are added to Mr. Berry's annual buy-in payment, the appellant had a total personal net taxable income of $58,688.00 in 1987. When $58,688.00 is spread over twelve months, this leaves the appellant approximately $4,890.00 available income before taxes per month.
Despite an admittedly robust growth in the appellant's CPA practice, as evidenced by his firm's increasing gross fees, increased draws, and higher net profits, the appellant maintained at trial and here on appeal, among other things, that his firm had to borrow money at the end of the year to make ends meet and had a $11,000.00 *259 note that they had not been able to pay. This conclusion is directly contrary to the evidence which established that in the years immediately prior to the divorce the appellant's income from his accounting practice had steadily increased and that he had made substantial investments in commercial real estate and an oil share.
After careful review of the record in this case, we are of the opinion the chancellor, in arriving at his findings and entering judgment, considered the factors set out in Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147 (1955):
(1) The health of the husband and his earning capacity;
(2) The health of the wife and her earning capacity;
(3) The entire sources of income of both parties;
(4) The reasonable needs of the wife;
(5) The reasonable needs of the child;
(6) The necessary living expenses of the husband;
(7) The estimated amount of income taxes the respective parties must pay on their income;
(8) The fact that the wife has the free use of the home, furnishings, and automobile; and
(9) Such other facts and circumstances bearing on the subject that might be shown by the evidence.
Id. 84 So.2d at 153. See also Carpenter, 519 So.2d at 894; Tutor v. Tutor, 494 So.2d 362 (Miss. 1986); McKay v. McKay, 312 So.2d 12, 14 (Miss. 1975); Nichols v. Nichols, 254 So.2d 726, 727 (Miss. 1971).
The chancellor's award is not such a high percentage of the appellant's monthly income that he will be left without money to pay his monthly expenses. It is also not so high that it will provide the appellee and the parties' child with a higher standard of living than the appellant. Here, the appellee was not awarded any part of the appellant's oil share investment, residential real estate investment, his commercial building, or an equitable interest in the eight acres and house which the appellant inherited. The chancellor's award of child support and alimony was not manifest error.
Assigned error number one is rejected.
The appellant contends that the lower court was manifestly wrong in allowing an attorney's fee of $2,000.00 for appellee. The record reflects that appellee was unable to pay her full attorney's fees and had paid only $500.00. Appellant was asked on the witness stand how much he was paying his attorney. Appellant replied that he thought it to be $2,500.00 but whatever it was, the fee was reasonable. Upon the record before us, appellee is entitled to attorney's fees for services in the lower court and the amount allowed is reasonable.
The assigned error number two is rejected.

III.

DID THE LOWER COURT ERR IN DISMISSING THE APPELLANT'S COUNTER CLAIM, THEREBY REJECTING HIS CLAIM THAT HE OWNED A 100% EQUITABLE INTEREST IN THE 112 ACRES OF LAND LESS 5 ACRES ON WHICH THE POWER'S HOME IS LOCATED?
The appellant contends here that the Court should hold that appellee holds her one-half interest in the property involved in trust for his benefit because the land was deeded to him alone; she contributed no funds to securing the land; the conveyance was made only pursuant to getting a loan to build their house; that he had no choice but to deed over the property; and that there was no testimony that he intended to give the land to her as a gift.
Appellant acquired the land by gift from his Aunt Grace. When the parties decided to build a home on part of the 112 acres, because of the size of the loan, i.e., $68,500.00, the Federal Land Bank required that both parties' income be considered in the application and, in order to be considered, each party had to have an interest in the land. On the day the parties executed a deed to themselves, creating an estate by the entirety with rights of survivorship *260 and not as tenants in common, their attorney explained to them what the conveyance meant as a matter of law and he testified that the parties understood the property was to be jointly owned. By having an interest in the property and executing the note and deed of trust, appellee had as much responsibility and obligation to the Federal Land Bank as did the appellant.
In Miller v. Miller, 298 So.2d 704 (Miss. 1974), the question arose as to how the respective portions of the proceeds of jointly owned property should be allocated to the divorced husband and wife. The husband claimed 80/91 of the total because his contribution was much greater. The wife claimed that each was entitled to an equal share. The Court said:
We conclude from the record that the chancellor correctly found that each of the parties is the owner of an equal estate in the property as joint tenants, under the clear terms of the conveyance, and that there is no evidence in the record to justify an alteration of the instrument so as to change this result. On the contrary, it appears beyond dispute that the character and attributes of the estate conveyed were the deliberate choice of appellant, acting upon the advice of counsel. Furthermore, if appellant's cash contributions over the years exceeded those of appellee, the presumption that appellant, in having the property conveyed to himself and his wife in equal joint tenancy, intended thereby a gift to appellee, has not been overcome by clear or convincing evidence and must prevail.
Miller, 298 So.2d at 707.
In Miller, the Court quoted and adopted the following language from Weeks v. Weeks, 72 Nev. 268, 302 P.2d 750 (1956):
The benefits and dangers, the advantages and disadvantages of joint tenancies by husband and wife have been for many years the subject of wide discussion among lawyers, banks, trust companies and others, and in later years with a special view to federal tax liabilities. A choice of the tenancy must be made, and we may assume that it will sometimes be made inadvisedly or that later developments may indicate that the choice, seemingly advantageous at the time, has resulted in loss or hardship. Here the respondent by gift created a joint tenancy for the purpose of gaining certain advantages which such tenancy provided. The fact that respondent had in mind the advantages to be gained does not weigh against the creation of such a tenancy, but in its favor. The fact that he did not have in mind the disadvantages of joint tenancy is unfortunate but cannot act to destroy the tenancy or avoid the gift.
Miller, 298 So.2d at 707.
In present times, deeds between husband and wife are common, even without consideration, and are necessary vehicles in the family business and relationships. Numerous business transactions could be mentioned, which benefit either or both spouses.
We are of the opinion that the learned Chancellor correctly applied the law in deciding this issue, and assigned error number three is rejected.
There being no reversible error in the trial below, the judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., dissenting and ANDERSON, J., joins the dissent.
DAN M. LEE, Presiding Justice, dissenting:
Unlike the conclusion drawn in the majority opinion, I believe the chancellor manifestly abused his discretion by engaging in speculation rather than ruling on the true facts of this case. Specifically, I believe he awarded an excessive amount of monthly alimony and child support in light of appellant's circumstances.
In pertinent part the chancellor found:
I think he's making between $2700.00 and $2800.00 a month. He's made between *261 $2500.00 and $3,000.00 a month, and when I give you $1500.00 a month, I'm giving you about half of what Mr. Powers says he's making. Mr. Powers is capable of earning $50,000 a year, easily, as a Certified Public Accountant. He's a man of great ability. He's established a fine practice, and he is just now going to have to devote his attention and time to managing his business and producing and taking care of these items that I'm finding that he needs to take care of.
(Majority opinion, pg. 3).
The fact of the matter is that the chancellor apparently based his calculations upon speculation that appellant "is capable of earning $50,000 a year, easily, as a Certified Public Accountant." When as a matter of fact the trial judge found "he's [Keith Powers] making between $2,700 and $2,800 a month," the record simply does not support any greater amount, particularly $50,000 a year.
However, the chancellor found that "[h]e's [appellant] made between $2500.00 and $3000.00 a month, and when I give you $1500.00 a month, I'm giving you about half of what Mr. Powers [appellant] says he's making." (Majority opinion, pg. 3) The reality of the situation is that, at most, appellant makes $3000 gross per month, not excluding taxes (taxes are a minimum of 28%, and when this $840 per month is deducted, it leaves only $2,160 net to appellant). By subtracting the $1,450 amount in child support and alimony,[1] this leaves appellant with approximately $710 net each month to make ends meet, compared to his wife's net amount of $2,282.18 ($832.18 net earnings plus $1,450 in child support and alimony). On a projected yearly basis, appellee/wife would have a disposable income of $27,386.16 net and appellant/husband would have a disposable income of $8,520.00 net.
If upheld as the chancellor found and the majority of this Court appears to affirm, this case would be put squarely in the confines of the case of Nichols v. Nichols, 254 So.2d 726 (Miss. 1971). Therein, the disparity (about $1,880 per year more for the wife) was considerably less than in the case sub judice and this Court, in reversing and remanding the case, noted "the husband is being forced to contribute such a large percentage of his income to the wife that she has a much greater income and standard of living than his own." Id. at 727. The same would be true for the case sub judice.
Further, the Nichols Court cited Aldridge v. Aldridge, 200 Miss. 874, 27 So.2d 884 (1946), as follows:
Any test of the justice of such award must include not only the benefit to the wife but the resultant burden to the husband. Once it is determined, as by our acceptance of the chancellor's finding we have done, that the amount awarded is a sufficient benefit to the wife, there remains the duty of testing the extent of the correlative burden upon the husband.

200 Miss. at 828, 27 So.2d at 885. (Emphasis added.)
The real numbers in the case at hand reflect an unfair burden upon the husband/appellant and is a grossly inequitable division of the available income. Also adding to the unbalanced scales of justice herein is the fact that appellee/wife was awarded sole possession of the house, which sits upon 112 acres of land originally acquired by gift from appellant's Aunt Grace. The chancellor has in essence deprived appellant of his home place, forcing him to find new living quarters and yet has split the "income pie" to the net effect of greater than a three-quarters to the wife and child for alimony and child support, and less than one-quarter to appellant to pay for medical/hospital/life insurance for the child (Robbie), plus lodging, food, transportation and all other living expenses of husband/appellant.
*262 Similar to the cases of Nichols, supra, and McKay v. McKay, 312 So.2d 12 (Miss. 1975), the case sub judice should be reversed and remanded for another hearing by the learned chancellor, applying the principles of Nichols, supra, and its progeny in determining the amount of alimony and child support.
ANDERSON, J., joins in this dissent.
NOTES
[1] The chancellor, upon the appellant's request, reduced the amount of child support by $50.00 to $700.00 to allow for medical and hospitalization insurance for Robbie which the appellant was ordered to continue to carry.
[1] The Chancellor, upon appellant's request, reduced the amount of child support by $50.00 to $700.00 to allow for medical and hospitalization insurance for Robbie, which the appellant was ordered to continue to carry. However, this $50 is still to be paid by appellant for the benefit of the child, Robbie, so the $1,450 figure per month really should remain at $1,500 per month.