**Seana PELTON, as Judgment Creditor of James O. Meeks, in his capacity as Executor of the Estate of James H. Meeks, Plaintiff,**

**v.**

**Audrey Annette MEEKS, aka Annette L. Meeks; and DOES I–III, Defendant.**

**Annette MEEKS, Third–Party Plaintiff and Counterclaimant,**

**v.**

**Seana PELTON; Elko Heat Company, a Nevada corporation; and James O. Meeks, in his capacity as Executor of the Estate of James H. Meeks, Third–Party Defendants and Counterdefendants.**

**No. CV–N–97–074–ECR.**

United States District Court, D. Nevada.

Feb. 5, 1998.

Gary E. DiGrazia, Elko, NV, for Plaintiff.

Eric G. Easterly, Elko, NV, for Defendant.

### ORDER

EDWARD C. REED, Jr., District Judge.

Defendant Audrey Annette Meeks has moved (# 13) for summary judgment. Plain-tiff Seana Pelton has opposed (# 14), and Ms. Meeks has replied (# 15). For the reasons outlined below, this motion is DENIED without prejudice.

## BACKGROUND

Our summary of the facts comes from Defendant's summary judgment motion. James H. Meeks lived in Elko, Nevada, with his wife and two children, James O. Meeks and Diane Mackie. At some point he divorced his wife and in 1994 married Defendant Audrey Annette Meeks. For reasons not germane to the present motion, on September 12, 1995 he murdered his ex-wife and his daughter Diane, and then killed himself. James O. Meeks, his son, was appointed executor of the estate.

The estate lacks sufficient assets to pay all its debts. About two weeks before his death, James H. Meeks had written a check on an account he owned jointly with his son James O. Meeks. The check was for $128,000 and was made out to his wife Audrey. On September 12, 1995, the same day he died, he withdrew an additional $27,000 or so from the same joint checking account, purchased a cashier's check, and delivered it to Audrey.

Plaintiff Seana Pelton, the daughter of Diane Mackie, successfully sued her grandfather's estate for the wrongful death of Ms. Mackie, and accordingly became a judgment creditor of the estate of James H. Meeks. In January 1997 she sued Audrey Meeks alleging, among other things, that James H. Meeks' two payments to his wife were void as gifts in contemplation of death and as fraudulent transfers, and seeking a declaration that she has a "priority creditor's claim." Compl. at 6–8(# 1a). The action was removed to this Court. Notice (# 1). Defendant Audrey Meeks moved (# 13) for summary judgment, which motion is now ripe. Defendant also moved (# 13) to dissolve a writ of attachment on certain real property, but this motion has been rendered moot by the parties' stipulation to keep it in place. Stipulation (# 16).

## DISCUSSION

### I. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no

**806**

dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Department of Agriculture,* 18 F.3d 1468, 1471 (9th Cir.1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c); *Beyene v. Coleman Security Services, Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson,* 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

## II. Merits

Defendant argues that Plaintiff has no standing to maintain this suit (at least with respect to the gift, fraudulent transfer, and creditor's claim causes of action), for three reasons: 1) funds drawn on the joint account of James Meeks, father and son, would have passed to the son on the father's death had they not been withdrawn, and therefore they would not have been part of the estate subject to the father's creditors, 2) actions to recover gifts in contemplation of death or fraudulent transfers are maintainable only by the estate executor, and 3) assuming that James O. Meeks assigned to Plaintiff the right to sue to void the gift/fraudulent transfer, the assignment was never confirmed by the probate court.

### A. Assignment

■ The third argument has merit, although not for the reasons given by Defendant. NRS 148.210 states that "choses in action 11 may be sold in the same manner as other personal property." A "chose in action" is defined as a "personal right not reduced into possession, but recoverable by a suit at law." Black's Law Dictionary Rev. 4th ed. (1968). Plainly, the right to recover the gift/fraudulent transfer is just such a chose in action. Thus, as we read the Nevada statute, the present right of action may be sold in the same manner as other personal property. We note that the Nevada Supreme Court has published no cases construing this language.

Other personal property is to be sold with 10 days' notice, in public, preferably at the courthouse door. NRS 148.190. There is no evidence that Ms. Pelton and Mr. Meeks complied with this procedure. Consequently, the purported "assignment" is not valid and Ms. Pelton may not maintain this action as assignee of the gift/fraudulent transfer causes of action.

### B. Executor as Named Plaintiff

This is not fatal to Plaintiff's case, however. As Defendant correctly notes, NRS 143.150 and 143.160 govern actions on behalf of an estate to recover property donated in view of death or fraudulently transferred. As we read them, and on the facts of this case, these statutes require that:

1) only the executor may prosecute any such action, and

2) the executor need not prosecute any such action, unless

   a) a creditor makes application therefore, and

   b) the creditor pays the costs of litigation.

It is undisputed that Ms. Pelton has "made application" to Mr. Meeks, and that she is paying for and orchestrating the case. Meeks Aff. at ¶ 19 (#·14, Ex. 3). This is not good enough, however, since Ms. Pelton has sued in her own name, even though the statute calls for prosecution by the executor.

Although Defendant makes much of this issue, we think it is probably just a formality under the circumstances, and may be corrected simply by adding James O. Meeks as a party plaintiff. Defendant plainly has no grounds to protest such a course of action, since if Plaintiff were to move on her own to amend her Complaint the motion would almost certainly be granted. *Forsyth v. Hu-*

*mana,* 114 F.3d 1467, 1481 (9th Cir.1997) (noting that leave to amend should be granted with "extreme liberality"). We will thus grant Plaintiff and James O. Meeks leave to file an Amended Complaint, with James O. Meeks as a party plaintiff in his capacity as executor of his father's estate. If Mr. Meeks declines to join in this action Defendant may renew the present motion for summary judgment.[1]

### C. Whether a Check Drawn on a Joint Account is a Gift

Finally, as to the first argument, there are genuine issues of material fact. Because Defendant has not distinguished between the "gift" and "fraudulent transfer" causes of action in connection with this argument, we need only address one of the two.

A "gift causa mortis" is recoverable by the personal representative unless the donee proves the following by clear and convincing evidence: 1) a gift made in anticipation of near approach of death, 2) by actual or symbolic delivery, 3) by the donor or at his express request, 4) of personal property, 5) to the donee or to someone on his behalf, 6) subject to the donor's right (implied in law) to revoke the gift in case of recovery. *Goldsworthy v. Johnson,* 45 Nev. 355, 368–69, 204 P. 505 (1922). A gift in contemplation of death which does not meet these requirements is voidable by the donor (if he recovers) or his personal representative. *Hulley v. Chedic,* 22 Nev. 127, 146, 36 P. 783 (1894).

In other words, a gift in contemplation of death is presumptively voidable by the personal representative of the deceased, and the presumption may be rebutted by the donee with clear and convincing evidence of the six elements listed above.[2] Although

---

1. Because we have resolved this issue by granting leave to amend, we need not reach Plaintiff's argument that NRS 143.150 is nonexclusive—that is, that an estate's creditor may prosecute an action notwithstanding the executor's statutory grant of authority to do so. This question of Nevada statutory interpretation appears to be one of first impression, and we leave it for a later day.

2. Such a burden of proof implies a potential absurdity. Specifically, if a donor delivers a gift causa mortis, then recovers and seeks to revoke the gift, it would make little sense for the donee to bear the burden of proving that the gift was revocable. If the donee proved revocability, the gift could be revoked, and if the donee did not prove revocability, the gift would not be a gift causa mortis at all and would thereby be revocable—truly a "heads I win, tails you lose" sit-

*Goldsworthy* and *Hulley* are the only Nevada cases ever to have examined the gift causa mortis doctrine, and they have never been overruled, at least one Nevada case has suggested (in a different context) that the burden of proof may not be on the donee. *North Arlington Medical Building, Inc. v. Sanchez Construction Company,* 86 Nev. 515, 521, 471 P.2d 240, 244 (Nev.1970) (holding that inter vivos gift to minor is presumptively effective under NRS 167.040). *North Arlington* is not really on point, however, since it construed a special statute covering gifts to minors, and the consensus of other states is that the donee bears the burden of proving a gift causa mortis (or inter vivos gift) by clear and convincing evidence. *E.g., Leon v. Caroselli,* 1997 WL 266761, *2 (Ohio Ct.App. May 21, 1997); *Hansel v. Hansel,* 939 S.W.2d 110, 112 (Tenn.Ct.App.1996); *Dorman v. Arnold,* 932 S.W.2d 225, 228 (Tex. App.1996); *Dulany v. Taylor,* 105 Md.App. 619, 660 A.2d 1046, 1053 (1995); *O'Flarity v. O'Flarity,* 42 Ark.App. 5, 852 S.W.2d 150, 154 (1993). *But compare* 35 Cal.Jur.3d, Gifts § 36 (noting that burden is generally on donee) *with, e.g., Azevedo v. Azevedo,* 1 Cal. App.2d 504, 36 P.2d 1078, 1080 (1934) (delivery need not be proven by donee where donee recorded deed). We conclude, contrary to the apparent understanding of the parties, that Plaintiff is under no burden to prove anything, and that it is Defendant's burden to demonstrate at summary judgment the lack of a genuine issue of material fact.[3]

Consequently, if Defendant is correct and the delivery of the $155,000 to her is not, as a matter of law, a gift causa mortis, then (in the absence of some other defense to Plaintiff's suit) Defendant loses. We find, though, that Defendant's contention regarding the $155,000 is unpersuasive.

■ Defendant's argument implicates, it seems, the second, third, and fourth elements of the cause of action. As to the second element, the element of "delivery," there is at least a genuine issue of material fact regarding whether Mr. Meeks' actions were sufficient to effect delivery of the $155,000. The $128,000 was clearly delivered to Ms. Meeks; the check was endorsed and paid out by the bank on September 5, 1995. Check (# 14, Ex. # A). This is sufficient to constitute delivery under even the strictest standard. The $27,000 cashier's check was purchased the day Mr. Meeks killed himself, but was not cashed until September 18. Check (# 14, Ex. 3C). Although we have found no Nevada cases directly on point, *Goldsworthy* suggests that if the donor did everything "physically []possible" to deliver the gift, then the gift was constructively delivered. *Goldsworthy,* 45 Nev. at 373, 204 P. 505. In this case, Mr. Meeks withdrew the $27,000 via bank draft, purchased the cashier's check, and gave it to his wife; such a cashier's check is not subject to revocation or stop-payment and all Ms. Meeks had to do to take possession of the money was present it to the bank. Draft (# 14, Ex. 3B); NRS 104.3412(1)(a) (issuing bank obliged to honor cashier's check). Although a jury might find that it was "physically possible" for Mr. Meeks to simply give his wife a briefcase full of $27,000 hard currency, a reasonable jury could also find that,

uation. At least one state has resolved this conundrum by holding that merely attempting to revoke the gift (e.g., by suing the donee) establishes conclusively that it was intended to be revocable, and the donee thus need not prove the sixth element. *Adams v. Atherton,* 132 Cal. 164, 64 P. 283, 284 (1901). In the present case, of course, this difficulty is not present, since James H. Meeks died and the purported gift therefore may be voidable, but it can no longer be revoked.

**3.** "Gift causa mortis" is apparently what the parties seek to litigate. We note, however, that the gift at issue here is colorably a gift inter vivos or a gift between husband and wife. The primary difference between a gift inter vivos and a gift causa mortis is that a gift causa mortis is

revocable, typically in the event the donor does not die. *See Creekmore v. Creekmore,* 126 N.C.App. 252, 485 S.E.2d 68, 71 (1997). Although the burden of proving a gift inter vivos is on the donee, the elements of proof are fewer and less onerous. *See Edmonds v. Perry,* 62 Nev. 41, 61, 140 P.2d 566 (1943) (listing elements) By contrast, the burden of proving a gift between spouses is on the donor (or personal representative). *Peardon v. Peardon,* 65 Nev. 717, 749, 201 P.2d 309 (1948). Since it is not entirely clear which cause of action we should be analyzing, we have viewed the evidence and argument in the light most favorable to Plaintiff (as we must at summary judgment) and examined the most difficult claim for the Defendant to prove.

by giving her a cashier's check (which is almost as good as cash), he did everything physically possible to deliver the purported gift. There is thus a genuine issue of material fact as to the second gift causa mortis element.

Our conclusion on the third element is the same as our conclusion on the second element. That Mr. Meeks "delivered" his gift by check, so that Ms. Meeks had to present the two checks to the bank, is sufficient to establish that his gift was made at his express request. *See Goldsworthy,* 45 Nev. at 373, 204 P. 505 (a written order to the bank is sufficient to sustain a gift causa mortis).

As to the fourth element, the element of "personal property," we think that *Weeks v. Weeks,* 72 Nev. 268, 275–76, 302 P.2d 750 (1956), though not directly on point, is dispositive. In *Weeks,* a husband had deposited an inheritance in the joint bank account he held with his wife. He then withdrew money from that account, over his wife's objections, to purchase some cattle, and the two eventually divorced. The wife argued that the inheritance, because the husband deposited it in the joint account, became thereby community property and that the cattle were therefore jointly owned. The Nevada Supreme Court rejected this argument, noting that "the facts ... are sufficient to ... support the court's holding of the defendant's individual ownership of the purebred cattle." *Id.* at 276, 302 P.2d 750. Here, the evidence indicates that the joint account consisted largely of money the elder Meeks deposited in it, even though the account was joint, and that he withdrew the $155,000 from the account for his own purposes. Meeks Aff. (# 14, Ex. 2). As in *Weeks,* therefore, the fact that the $155,000 would have passed to the younger Meeks directly on the elder Meeks' death is irrelevant; having been withdrawn from the joint account with or without the younger Meeks' consent, the $155,000 was properly property of the elder Meeks. Summary judgment is therefore inappropriate on this ground.

***IT IS THEREFORE, HEREBY ORDERED THAT*** Defendant's motion (# 13) for summary judgment is ***DENIED*** without prejudice to renewal.

***IT IS FURTHER ORDERED THAT*** Plaintiff shall have 20 days from entry of this order within which to file an Amended Complaint.